CITY OF PROVIDENCE *vs.* MARY DEXTER PAYNE *et al.*

JUNE 30, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Wills.   Charitable Trusts.*

Testator by will in 1824 gave to the town of Providence, a farm to be appropriated to the support of the poor of the town, "and for no other use or purpose whatever".

The will provided that the town should within five years after decease of testator erect buildings for the use of the poor and keep. and maintain the same for that sole use and purpose forever and should within twenty years erect around the farm a stone wall of designated size and thickness. Testator also left to the town the residue of his estate to constitute a permanent fund for the support of the poor and to be preserved entire forever.

The town accepted the gifts and by resolution pledged the faith of the town "to the true and just performance of the said conditions in every particular thereof".

From that time the "Donation" has been administered in conformity with the provisions of the will, but owing to changed conditions the portion of the property conducted as a farm could not be operated at a profit.

Upon bill filed seeking a construction of will, as to whether a portion of the tract could be platted into house lots and sold and the proceeds invested and the income devoted to the purposes directed by the will or whether it could be platted into house lots and leased and as to whether the wall could be removed.

*Held*, that it was the intention of testator to give the property to the town for charitable uses.

*(2)   Charitable Trusts.   Gifts Upon Condition.*

*Held*, further, that whether a devise creates a charitable trust or is a gift upon condition subsequent will be determined from the intent of testator to be gathered from a consideration of the devise as a whole.

*Held*, further, that the conditions should not be regarded as attached to the devise but rather as the earnest expression of a direction as to the mode of administration.

*Held*, further, that the fact that changed conditions have resulted in a reduction of income from the property had no bearing upon the questions before the court.

*Held*, further, that it was not within intention of testator that the town should sell any portion of the property, nor did he intend that a portion of the wall might be removed and part of the property platted into house lots and leased for purposes which would destroy its use by the poor, to which use he had dedicated all of it.

*(3)   Equity.   Charitable Trusts.*

Equity favors charitable trusts and though the terms of a gift of property may be somewhat uncertain, if it appears to have been the purpose of the donor to limit property to a benevolent public use it will be held to be a gift to public charity.

*(4)   Wills.   Conditions.*

While the words "upon condition" are apt words to create a condition they do not necessarily create such an estate.

*(5)   Conditions Subsequent.   Wills.*

Conditions subsequent are not favored in the law; while in the case of somewhat doubtful language courts are inclined to construe a devise as a gift to public charity when such construction is possible.

*(6)   Municipal Corporations.   Charitable Trusts.*

Unless prevented by legislative provision to the contrary a municipality may act as trustee under a public charitable trust if the purposes of that trust are germane to the objects of the municipal incorporation.

*(7)   Equity.   Charitable Trusts.*

The superior court under its chancery powers has jurisdiction over the administration of a charitable trust created for the benefit of the poor of the town of Providence.

If through change in circumstances the particular mode or scheme of the testator for carrying out his primary paramount intent has failed, or has ceased to be useful, the court, upon evidence establishing that fact has power to modify the testator's secondary plan that his general intent may be better effectuated.

BILL IN EQUITY seeking construction of will.   Certified under statute.

SWEETLAND, C. J.   This is a bill in equity asking for the construction of certain provisions of the will of Ebenezer Knight Dexter, deceased, late of the town of Providence, and for instructions relative thereto.   In accordance with the provision of the statute the bill as amended has been certified to this court for determination.

The respondents named in the bill are the collateral heirs of the testator, and the "freemen" of Providence.   Answers to the amended bill have been filed in behalf of said heirs and by certain of the "freemen" of Providence.   At the hearing before us oral arguments were made and briefs filed in behalf of said respondents.

The testator died a resident of the town of Providence, August 10, 1824, and his will was duly probated in said town on August 30, 1824.  After making a number of private bequests the testator in the sixteenth paragraph of the will devised to the town of Providence a large tract of land lying in the town for use as a "training field".   This tract is still maintained in accordance with the provisions of the will and is known as the Dexter Training Ground.

The provisions of the will with regard to which construction is now sought are contained in the seventeenth and eighteenth paragraphs thereof and read as follows: "Seventeenth.   Feeling a strong attachment to my native town, and an ardent desire to ameliorate the condition of the poor, and to contribute to their comfort and relief, I give, grant and devise to the aforesaid town of Providence, in fee simple for ever, my Neck Farm, in said Providence, lying southerly of the Friends' Yearly Meeting School estate, together with all the buildings thereon, to be appropriated to the accommodation and support of the poor of said town, in manner hereinafter mentioned, and for no other use or purpose whatever.   Provided, however, and this devise is upon condition, that said town shall, within five years after my decease, erect a building or buildings on said farm, suitable for the use and accommodation of the poor of said town, and shall, under their own management and direction, keep and

maintain the same for that sole use and purpose forever; and provided, also, and this devise is upon this further condition, that said town shall within twenty years after my decease, erect all around upon the exterior lines of said farm, leaving, however suitable passage ways into the same, a good permanent stone wall, at least three feet thick at the bottom, and at least eight feet high, and to be placed upon a foundation made of small stones, and as thick as the bottom of the wall and sunk two feet deep in the ground. I hereby authorize said town, however, to exchange at any time before the building of said wall, such parts of said farm as they may think best, for other lands adjoining, for the purpose of straightening the lines of said farm, or throwing it into better shape, but for no other purpose.

"Eighteenth.    I also give, grant, devise and bequeath to the aforesaid town of Providence, in fee simple for ever, for the use of the poor of said town, as hereinafter mentioned all the rest, residue and remainder of my estate, both real and personal, not herein otherwise disposed of, the said town paying thereout, or out of the rents, profits or income thereof, at their discretion, the annuities aforesaid; and for the payment of which said annuities, all the real estate herein devised to said town, except the said Neck Farm and said lot devised for a Training Field, is to stand charged and chargeable.    And I do hereby give said town full power and authority to sell, if they judge it best, the whole, or any part of the real estate herein devised to them, except the said Neck Farm and the said lot devised for a training field and to invest the proceeds of the sales thereof in bank or other stocks—the whole of said property and estate herein devised and bequeathed to said town to be kept together and to constitute a permanent fund for the benefit of the poor of said town, and to be preserved entire for ever; and until the said town shall have erected a building or buildings on said Neck Farm in the manner and for the purpose as is hereinbefore mentioned, the rents, profits and income of all the property and estate herein given and devised to said

town, including the rents, profits and income of said Neck Farm to be added to said permanent fund and to constitute a part thereof; and when said town shall have so erected such building or buildings, and placed the same in suitable condition and under proper regulations to receive the poor of said town, then and from that time, all the rents, profits and income of all the property and estate herein given and devised to said town, including the rents, profits and income of said Neck Farm to be applied by said town to the support and maintenance of the poor of said town, in such way and manner as said town from time to time, at any meeting legally holden, shall in their discretion direct, and for no other use or purpose whatever; provided, however, that no vote of any town meeting in relation to any part or portion of the property or estate herein devised and bequeathed to said town, or in relation to the management of the same, or of the rents, profits or income thereof, shall be of any force or effect, unless forty freemen, at least, be present at the time of passing such vote."

The town at a special town meeting held on November 24, 1824, accepted the "Donation" of the testator by resolutions of which the following is a part: "Resolved, that the conditions under which the said Donation to the Town of Providence is in & by the said last Will & Testament devised & bequeathed, are altogether judicious and just, and as such, are accepted & ought to be performed by said Town; and the faith of the said Town of Providence is hereby solemnly pledged to the true and just performance of the said conditions in every particular thereof, according to the provisions of said last Will & Testament."

In 1828 the town of Providence, at its own expense, erected an asylum building upon the Neck Farm and immediately devoted it to the use and accommodation of the poor of the town. This asylum building together with other buildings erected upon the farm since that time have continued to be devoted solely to that use. The town also at its expense erected a wall around the farm in exact com-

pliance with the specifications of the testator contained in the seventeenth paragraph of his will. This farm, surrounded by its high stone wall, has continued down to the present time as one of the landmarks of the town and the city of Providence and is known as the Dexter Asylum. By reason of the growth of Providence it is now surrounded by a valuable residential section of the city. Until the incorporation of the town of Providence as a city in 1831 the Dexter Donation, so-called, was managed in accordance with the directions of the town meeting of the freemen of the town and the "rents, profits and income thereof" applied solely to the support and maintenance of the poor of the town.

In the Act of Incorporation of the City of Providence it was provided that the inhabitants of the town of Providence by the name of the City of Providence "shall have, exercise and enjoy all the rights, immunities, powers, privileges and franchises and shall be subject to all the duties and obligations now appertaining to or incumbent upon the freemen and town council thereof". It was further provided "that it shall at all times be lawful for the freemen of the city of Providence or any number of them, not less than forty, to hold town meetings in said town for the purpose of transacting business in relation to the property and estate devised to the town of Providence by the last will and testament of Ebenezer Knight Dexter and denominated the Dexter Donation and the Asylum and other town or city property connected therewith".

Since the incorporation of the city of Providence the freemen of that city have held town meetings at least once in every year and at said town meetings have conducted, controlled and administered the property known as the Dexter Donation. It appears in the agreed statement of facts that in every respect the town and the city of Providence have with great care administered the Dexter Donation, including the Neck Farm known as the Dexter Asylum, in strict conformity with the provisions of the devises

under the seventeenth and eighteenth paragraphs of the will.

A large portion of the asylum property has, up to the present time, been conducted for profit as a farm. It is stated that now by reason of existing conditions in the farming industry that portion of the asylum property can no longer be so operated with profit. In these circumstances at the instance of the City Council of Providence this bill has been instituted for the construction of the seventeenth and eighteenth paragraphs with particular reference to the following questions stated in the bill:

"FIRST: May that portion of the said Neck Farm shaded red upon the plat hereto annexed and marked 'Exhibit C' be platted into house lots, sold under proper restrictions for residential purposes, and the proceeds invested in some other manner, the income thereof to be devoted to the uses and purposes by said will directed?

"SECOND: May that portion of said Neck Farm shaded red upon the plat hereto annexed and marked 'Exhibit C' be platted into house lots, leased under proper restrictions and the rentals thereof be devoted to the uses and purposes by said will directed?

"THIRD: If said portion of said tract of land may be sold or leased as aforesaid must such sale or lease be authorized by the town meeting or by the city council?

"FOURTH: May the said wall or any part thereof be removed?"

The portion of the asylum property shaded red upon the plat marked "Exhibit C" comprises that portion heretofore operated for farming purposes for profit.

The purpose and scope of this bill is strictly for the construction of said seventeenth and eighteenth paragraphs. The cardinal rule in the construction of wills is to ascertain and declare the intention of a testator as expressed in his will; hence the sole question before us is whether it was within the intention of the testator, either expressed in or

necessarily to be implied from the provisions of the will, that the town of Providence or the freemen of that town should have authority to sell or to lease the whole or any part of said Neck Farm, or to remove the wall which should be built around said farm in compliance with the specifications of the testator. It should be said in connection with the last question that in the furtherance of necessary highway improvements in the city of Providence a portion of the wall was taken down and set back along a new street line, and that, for the promotion of public safety, a small portion of the wall was taken down at two corners of the farm and set back to eliminate so-called "blind corners" at those points. In each instance the wall was replaced with new construction which strictly conformed with the specifications of the testator.

We will first consider the legal nature of the devise of the Neck Farm to the town of Providence. The respondents Mary Dexter Payne and George Robert Payne contend that, actuated by his strong attachment for his native town, the primary purpose of the testator was to make a gift to aid the town of Providence in meeting its corporate obligation to support the poor of the town. These respondents wish the court to declare that the devise of the Neck Farm was of a base or determinable fee, with the qualification subjoined that the farm should be used for the accommodation and support of the poor of the town "and for no other use or purpose whatever": that the devise was with a reverter to the heirs of the testator, if the farm ceased to be used for the purposes expressed in the will, in which case the fee would at once determine; that this possibility of reverter remains a vested interest in the heirs. These respondents further urge that the language of the testator would warrant the court in declaring that the devise was of an estate upon condition subsequent with a right of re-entry upon breach of the condition, which right of re-entry descended to the heirs of the testator. In our opinion the provisions of the seventeenth and eighteenth paragraphs of the will indicate

that it was the intention of the testator to give the Neck Farm to the town of Providence for charitable uses. This intention is shown in the testator's statement of the reasons which actuated the devise to the town in fee simple forever, and in the exclusive purpose for which he directs that the property shall be used, viz., for the benefit and support of the poor. A purpose in the testator by this devise either to lessen the public burdens of his fellow citizens as a class, or to ameliorate the condition of the poor indicates a benevolent intent to benefit an indefinite number of his fellowmen. Either purpose will support a charitable trust. It is "a gift to a general public use which extends to the poor as well as the rich". Such a gift is within the definition of a charitable use which has been approved by this court. In *Pell* v. *Mercer*, 14 R. I. 412, at 444, the court said: "We think, however, that a gift for purposes which are both public and benevolent, particularly when it appears, as here it does appear, that the gift is inspired, not by any partisan or political motive, but by the simple love of men as men, and by a desire for their permanent good, must be regarded as a charitable gift." *R. I. Hospital Trust Co.* v. *Olney*, 14 R. I. 449; *Webster* v. *Wiggin*, 19 R. I. 73. Equity is said to favor charitable trusts, and though the terms of a gift of property may be somewhat uncertain if it appears to have been the purpose of the donor to limit property to a benevolent public use it will be held to be a gift to public charity. The language of Mr. Justice GRAY in *Jackson* v. *Phillips*, 14 Allen 539, has frequently been approved by this court. In that case it was said: "By the law of this commonwealth, as by the law of England, gifts to charitable uses are highly favored and will be most liberally construed in order to accomplish the intent and purpose of the donor and trusts which can not be upheld in the ordinary cases for various reasons will be established and carried into effect when created to support a gift to a charitable use." In the devise of the Neck Farm the testator does not employ the words "trust" or "trustee" but that fact is of little

consequence if it is apparent from the language of the gift that it was the intent of the testator to impose upon the devisee an obligation to administer the subject of the devise for the benefit of an indefinite number of beneficiaries upon a charitable use. *Tillinghast* v. *Boy Scouts*, 47 R. I. 406.

In support of their contention the respondent heirs lay stress upon that language of the seventeenth paragraph wherein the testator provides that "this devise is upon condition" that within five years after his decease the town shall erect a building or buildings for the accommodation of the poor, and again, "this devise is upon this further condition" that within twenty years after his decease the town shall erect a wall as specified. Whether a devise creates a charitable trust or is a gift upon condition subsequent will be determined from the intent of the testator to be gathered from a consideration of the devise as a whole. The predominant purpose of this testator was to benefit the poor of his native town. It is not reasonable to conclude that he intended to make a gift upon condition subsequent whereby his benevolent purpose might fail, because some particular provision of his subordinate scheme for the administration of the gift was not strictly observed by the donee. The language referred to should not be regarded as a condition attached to the devise, but rather as the earnest expression of a direction to the town as to the mode of administration. While the words "upon condition" are apt words to create a condition they do not necessarily create such an estate. *Stanley* v. *Colt*, 72 U. S. 119. Conditions subsequent are not favored in the law; while in the case of somewhat doubtful language courts are inclined to construe a devise as a gift to public charity when such construction is possible. *Sohier* v. *Trinity Church*, 109 Mass. 1; *Neely* v. *Hoskins*, 84 Me. 386; *Alden* v. *St. Peters Parish*, 158 Ill. 631. In accepting the gift of the testator the town of Providence through its freemen in town meeting "solemnly pledged" the faith of the town "to the true and just performance of the condition in every particular thereof accord-

ing to the provisions of said will and testament," thus treating the devise not as one to be forfeited by failure to observe a condition subsequent, but as one imposing an obligation and a duty to be performed "so that the intention of the testator shall no wise be perverted".

The respondent heirs also argue that the testator must have intended the gift to be one made directly to the town upon a determinable fee and not by way of trust for charitable uses, because the testator must have known that the town as a municipal corporation was incapable, without legislative authority, of holding and administering such a trust. We do not regard this contention of the respondent heirs as sound. There is some language in the opinion in *Smith* v. *Westcott*, 17 R. I. 366, which may be interpreted as a statement that a municipality without legislative authority may not hold property on a public trust. That question however was not before the court at that time, as the case then at bar involved simply the power of the General Assembly to divest the city of Providence of the right to act as trustee in a certain private, not a public, trust, although such right had previously been conferred by the General Assembly. We think, however, that the weight of authority undoubtedly is that, unless prevented by legislative provision to the contrary, a municipality may act as trustee under a public charitable trust if the purposes of that trust are germane to the objects of the municipal incorporation. *Perin* v. *Carey*, 65 U. S. 465—503. Although a municipality may be incapable of holding property upon a public benevolent trust at the time of the creation of such trust, the municipality may nevertheless properly administer that trust upon subsequently receiving legislative authority therefor. The city of Providence was granted such authority by the General Assembly upon the passage of the statute now Section 2, Chapter 47, General Laws 1923, which is in part as follows: "Sec. 2. Towns may take, purchase and hold real and personal estate, and alienate and convey the same; and may also take, hold and manage the

same in trust for any charitable other than religious uses." It is our opinion, however, that this section is merely declaratory of the preëxisting common law in so far as it relates to charitable trusts which are in keeping with the interests and the purposes of a municipality.

At the hearing some reference was made to certain changes in conditions which have resulted in a reduction of the income from the Asylum property. That is a circumstance which has no bearing upon the questions before us. The Superior Court under its chancery powers has jurisdiction over the administration of the trust created in the testator's Neck Farm. If through change in circumstances the particular mode or scheme of the testator for carrying out his primary paramount intent has failed, or has ceased to be useful, the Superior Court, upon evidence establishing that fact and after full consideration of the matter, has power to modify the testator's secondary plan that his general intent may be better effectuated. By Section 9, Chapter 303, Gen. Laws 1923, the Superior Court is specifically given power to make a *cy pres* application of property held upon charitable trust, a power which it probably would have had without such statute under its plenary jurisdiction as a court of chancery. *Pell* v. *Mercer*, 14 R. I. 412. These matters are not involved in the case before us. We are called upon to determine simply the testator's intention, as expressed in his will, so far as it relates to the questions propounded by the complainant in the bill.

As to the first question, in view of the testator's plan for the use of the farm for the accommodation of the poor, expressed in the seventeenth paragraph and particularly the provision of the eighteenth paragraph, in which the testator gives to the town the discretion to sell all of the real estate devised to the town "except the said Neck Farm and said lot devised for a training field", we have no hesitation in deciding that it was not within the intention of the testator that the town should sell any portion of the Neck Farm.

We will consider the second and fourth questions together, since to plat a large portion of the farm into house lots and to lease the lots for residential purposes would necessarily involve the removal of the greater portion of the wall. It was the testator's expressed intention that the Neck Farm should thereafter be used for the "accommodation" of the poor of the town "and for no other use or purpose whatever". He provided that before the building of the wall the town should have authority to exchange "such parts of said farm as they may think best for other lands adjoining for the purpose of straightening the lines of said farm or throwing it into better shape but for no other purpose". In this provision is plainly to be seen the testator's plan that any desirable changes in the lines of the farm should be made before the erection of the wall, by means of which he sought to finally establish the farm as an individual unit. The provisions with regard to the wall, and the prominence which he gives to it in his scheme for the use of the farm, appear to us to throw much light on the questions under consideration. In a way the wall is a monument by means of which his intention is disclosed. He specified that it should be "permanent", and in order that it might be enduring he provided for its solid construction. We can not ascribe to the testator the futile purpose of providing for the erection of this massive barrier and at the same time intending that, while it still remained in unimpaired condition, it should be taken down, and thus throw open that which he wished to isolate. In directing with particularity for the erection of the permanent wall of the height of eight feet and of substantial construction, he can hardly be held to have the intent of restraining those for whom he was supplying a retreat and a shelter. He must be taken in this way to have further accentuated his purpose that the Asylum should not be encroached upon, even perhaps by the eyes of curious passers-by, but that it should be separated, and in its entirety be set apart solely for the use and accommodation, and to "ameliorate the condition" of those of his

unfortunate fellow citizens who might become the beneficiaries of his bounty.

As offering some support for a claim that it was within the intention of the testator that portions of the farm might be leased, the complainant has called our attention to the provision in the eighteenth paragraph that after the Asylum buildings were ready to receive the poor then and from that time all the rents, profits and income of all the property devised to the town "including the rent, profits and income of said Neck Farm to be applied by said town to the support and maintenance of the poor of said town". Strictly the term "rent" refers to the compensation received by a landlord for the use of land leased. *Fisk* v. *Brayman,* 21 R. I. 195. It is urged by the respondent freemen that in using the words "rent, profits and income" with reference to the Neck Farm the testator without consideration of the technical signification of the word "rent" was merely repeating the words which he had used in connection with the other lands devised to the town. Those other lands included not only land which the town undoubtedly might lease but also the land which the testator had devised in the sixteenth clause "for the use of a training field and to be appropriated to no other use or purpose whatsoever", which training field he clearly intended should not be leased. This circumstance throws some discredit upon the claim of the complainant with reference to the effect of the testator's use of the word "rent" in connection with the Neck Farm. The significance which the testator intended by its use, whether he used it loosely as synonymous with "profits and income" or with some other meaning and purpose is not clear to us. But we have no hesitation in finding that, in view of all the other provisions of the devise, he did not intend by the use of that word alone to provide that a considerable portion of the wall might be removed, and that more than half of the farm might be platted into house lots and leased for purposes which would destroy its use by the poor of the town, to which use he had dedicated all of said farm.

.We answer the first, second and fourth questions propounded in the bill in the negative. In view of those answers the third question ceases to have pertinency.

On July 6, 1926, the parties may present a form of decree in accordance with this opinion.

*Elmer S. Chace, City Solicitor, Ellis L. Yatman, Francis D. McManus, Assistant City Solicitors, for complainant.*

*Thomas A. Jenckes,* for Mary Dexter Payne and George Robert Payne.

*Greenough, Easton & Cross,* for certain respondents, freemen of Providence.