RHODE ISLAND HOSPITAL TRUST COMPANY *vs.* W. FRED WILLIAMS *et al.*

DECEMBER 16, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

386

BARROWS, J. This is a bill by the executor and trustee for construction of, and instructions concerning, the will of Arselia M. Babbitt, late of Bristol, who died September 20, 1927. It is certified as ready for hearing on final decree, pursuant to General Laws 1923 (4968).

The will, disposing of an estate of approximately $90,000, provides for payment of debts, care of burial lots and distribution of household furniture and personal belongings. It then contains a specific devise of a parcel of real estate in Bristol to two ladies, forgives their notes and obligations to testatrix and makes three pecuniary bequests of $500 each to other ladies. All the *residue* of the estate, amounting to approximately $75,000 is disposed of as follows: "(A) Seven twenty-fifths (7/25) thereof in equal shares to the Bristol Female Charitable Society, Saint Michael's Church in the Town of Bristol, State of Rhode Island, etc., Juniper Hill Cemetery, Bristol Home for Destitute Children, Home for Aged Women in Bristol, Bristol Cottage Hospital, all corporate bodies and all of said Town of Bristol, and the Saint Andrews Industrial School of Barrington, Rhode Island." The income from the other eighteen twenty-fifths of the residue is left in trust for four individuals for life and "On the death of all of said beneficiaries I direct my said trustee to transfer and set over the whole of said trust property in equal shares to said Saint Michael's Church in the Town of Bristol, State of Rhode Island, etc., said Bristol Cottage Hospital and said Saint Andrews Industrial School."

The Bristol Cottage Hospital was legally incorporated though dormant on April 26, 1906, when the will was executed. It so continued until November 23, 1925, at which time automatic forfeiture of its charter took place pursuant to the law so treating corporations which had failed to make returns to the State. The proceedings treated it as a business corporation. There is no evidence concerning testatrix's knowledge of these proceedings.

Owing to the forfeiture of the charter prior to testatrix's death, the executor seeks instructions as to the distribution of the one twenty-fifth residuary legacy given outright to the Bristol Cottage Hospital and, as trustee, asks further for instructions as to the disposition of one third of the eighteen twenty-fifths given to the Bristol Cottage Hospital and two other charitable corporations, on the decease of the four life beneficiaries above referred to,—of whom two have died and the other two are now respectively seventy-eight and eighty-four years of age.

The difficult problem in this type of case, as stated in *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628, and in *Teele* v. *Bishop of Derry*, 168 Mass. 341, is to ascertain whether the charitable intention of testatrix was specific only or if the dominant intent was of a general charitable nature so that it may be made effective *cy pres*. The will itself must first be examined to ascertain testatrix's intention. If it is not entirely clear, extrinsic evidence is proper to show the circumstances under which the will was executed and testatrix's knowledge of, and relationship to, the objects of her bounty. Such evidence was here offered by Dr. Williams, testatrix's family physician who had known her since 1865, and Miss Boynton now Mrs. Burns. Both knew of Mrs. Babbitt's intention at the time she made the will to aid a cottage hospital project in Bristol and Dr. Williams understood she had made provision therefor.

Discussion of cases outside of Rhode Island would serve no useful purpose. In seeking testator's intention different courts emphasize certain facts as of importance which other courts regard as of slight importance or feel to be overpowered by other evidence.

Here the undisputed facts were that testatrix for many years prior to the execution of the will had been very friendly with Miss Boynton and Dr. Williams. About 1892 a project had been initiated in Bristol to establish a "cottage hospital." In this Dr. Williams and Miss Boynton were interested. Such contemplated hospital was to

be a small "charitable" affair, of perhaps four rooms, devoted to emergency cases. The phrase "cottage hospital" is a term applied to such a small hospital. *Biscoe v. Jackson*, L. R. 35 Ch. Div. 460. Miss Boynton, as the moving spirit of a circle of King's Daughters, was instrumental in raising approximately $500 toward the enterprise. Mrs. Babbitt knew of the work of the "Circle", was in sympathy with it and talked about it with Miss Boynton. About 1895 the raising of money by the Circle ceased and thereafter its funds were held until 1905 on deposit in the name of "Bristol Cottage Hospital Fund. J. L. Boynton, Trustee." In that year Miss Boynton, when about to be married and leave Bristol, executed a deed of trust to three trustees of the Circle's funds. The trust imposed was "to pay same over to a cottage hospital or other institution performing the functions of such a hospital when established in Bristol." Dr. Williams was one of these trustees.

On May 14, 1896, by special act of the General Assembly, a charter had been granted to the "Bristol Cottage Hospital" for the purpose of "treating the sick, injured and disabled." The corporation was "subject to all the duties and liabilities set forth in Chapter 177 of the General Laws." (1896). This charter was duly accepted and the corporation organized. Dr. Williams was an incorporator. Miss Boynton, though interested, was not an incorporator and did not participate in the organization. The corporation did nothing beyond organization toward carrying out the project. No gifts or bequests were made to it.

In spite of the fact that the stated purpose of the organization might be accomplished by a business corporation, there is no doubt on the testimony that the hospital contemplated was to be a charitable organization.

In January, 1928, a new corporation was organized as the "Bristol Cottage Hospital." The incorporators included Dr. Williams, the only known survivor of the charter members of the first Bristol Cottage Hospital and the other two of the three trustees who now hold the King's Daughters'

390

fund by virtue of the deed from Miss Boynton. The purpose of the new corporation as set forth in its charter is admitted to be the conduct of a charitable hospital.

If doubt exists as to whether a gift is charitable, equity favors a construction favoring a public charity. *City of Providence* v. *Payne*, 47 R. I. 444. The gift to the Bristol Cottage Hospital was a gift to one of several specific public charities. Reference in its charter to General Laws, Chapter 177, did not alter the charitable purpose of the corporation and make it a "business" corporation, nor did the action of the tax commissioners in taking the steps preliminary to revocation of the charter. A bequest to a charitable corporation may lapse by termination of its existence before the death of testator. *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628. An absolute gift to a charitable organization without reference to the uses to which it may be put and without the use of the words "in trust" is, if such be testator's intention, for the purposes of the organization, *Town of South Kingstown* v. *Wakefield Trust Co. et al.*, 48 R. I. 27; *Tillinghast* v. *Boy Scouts*, 47 R. I. 406; *Taylor* v. *The Salvation Army*, 49 R. I. 316; *American Bible Society* v. *American Tract Society*, 62 N. J. Eq. 219; *In re Mills Will*, 200 N. Y. Supp. 701; 2 Perry on Trusts, 7th ed., § 733, p. 1258, and this notwithstanding the possibility of its misuse. *Laswell* v. *Hungate* (7th Circ.) 256 Fed. 635.

If a gift to a specific charitable corporation lapses it may not be applied *cy pres* unless from the will or extrinsic evidence the court may find a general charitable intent beyond that shown by the gift to the specific charitable corporation. *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628; *Wood* v. *Trustees*, 26 R. I. 594; 3 Pom. Eq. Jurisp. § 1027, p. 2308. The latter states the doctrine thus: it "seems to be settled by the recent decisions, that where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object can not be carried out, or the charity provided for ceases to exist before the gift takes effect, then the court will not

execute the trust; it wholly fails." Readiness exists to find a general charitable intent where the specific charity named is not found or functioning. *Loscombe* v. *Wintringham*, 13 Bevan, 87: *Re Clergy Society*, 2 K. & J. 615; *Re Maguire*, L. R. 9 Eq. 632; *Re Davis*, 1 Ch. Div. L. R. (1902) 876; *Re Mann*, 1 Ch. Div. L. R. (1903) 232.

The vital question presented in the present case is whether this will, making a gift to a particular specific charitable corporation existing when the will was executed but out of existence by operation of a statute when testatrix died, has been shown either by its own language or by extrinsic circumstances to exhibit a general charitable intent. Certain respondents urge that the specific bequest was merely a mode of carrying out a general charitable intention and that forfeiture of the corporation's charter did not prevent the application of the *cy pres* doctrine. *Hodge* v. *Wellman*, 191 Iowa, 877; *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280; *Wood* v. *Trustees, supra.*

Respondent Wooldridge, however, urges that lapse by dissolution of the "Bristol Cottage Hospital" having occurred the gift failed and intestacy resulted as to the portion of the residuary bequest to the Bristol Cottage Hospital. She admits if a general charitable intent can be found equity will not permit the charitable object to be defeated for want of a trustee but will employ the *cy pres* doctrine to carry out testatrix's intention. She urges that the *cy pres* doctrine is inapplicable in this case because there is no evidence of general charitable intent but only a provision for one specific particular object of a charity which can not be carried out.

*Gladding* v. *Saint Matthew's Church, supra,* she claims is absolutely controlling. A careful study of that case, wherein the court held that the intention was to make a gift only to a particular charity and that the will did not show "any general charitable intention," indicates that the court was impressed by the fact that testatrix's will contained a bequest to but one charity and that to "a church to

which she had belonged, and in whose prosperity she took great interest." The court said: "It is impossible for us to gather from any of her expressions that she made her gift to the church because it cared for the religious training of deaf mutes, rather than because of her affection for her former associates who composed it." The *Gladding* case well illustrates the doctrine from Pomeroy above quoted. The present case is somewhat similar to, but distinguishable from, the *Gladding* case. The "Bristol Cottage Hospital" was not the only charity named. Six others, however, were named together in the residuary clause and they take a large portion of her estate; distribution of the residue wholly among seven charities, of which the Bristol Cottage Hospital was one, is strong indication of testatrix's general intention to bestow the bulk of her estate upon charity. *Re Maguire,* L. R. 9 Eq. 632; *Re Davis, supra; Re Mann, supra.* In the *Gladding* case the church corporation was actively in operation carrying on its work when the will was executed and the failure to mention any charitable corporation other than the church to which the lapsed bequest was made is a striking circumstance. The court called attention to the fact that the church was one "to which she had belonged, and in whose prosperity she took great interest." The "Bristol Cottage Hospital" was not and never had been actively carrying on a charity. Testatrix must have known of this. The corporation, however, when the will was executed, was the one known legally existing instrument by which to advance the hospital project although then dormant. That testatrix intended solely to aid the dormant corporation rather than make it merely a vehicle for carrying out her general charitable intent is hard to believe. The "Bristol Cottage Hospital" was not shown to have been one in which testatrix had any interest whatever unless such interest could be inferred from Dr. Williams' connection therewith. He says nothing in his testimony of her ever expressing any interest in the corporation. On the other hand, he and Mrs. Burns say that she had an interest in the general charitable

project of a cottage hospital. From the will itself and from the testimony we think testatrix made the bequest to the "Bristol Cottage Hospital" as a mode of accomplishing her general charitable objects and not for what it had done or was doing. The gift, as some cases say, was for the purpose and not for the person. Finding such general charitable intent the case is ruled by the law of *Wood* v. *Trustees of the Fourth Baptist Church*, 26 R. I. 594, instead of *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628. The *cy pres* doctrine is applicable. *Pell* v. *Mercer*, 14 R. I. 412.

Testatrix's general charitable plan would perhaps be capable of accomplishment if the one twenty-fifth of the residue now distributable and the six twenty-fifths of the same later to be distributed should be given to the newly incorporated Bristol Cottage Hospital, a charitable corporation now in existence to carry out the general object of testatrix's bounty. The propriety of such payment is however a question for the Superior Court, which has exclusive original jurisdiction of application of the *cy pres* doctrine. *Gardner* v. *Sisson*, 49 R. I. 504.

Our construction is that the bequest to the Bristol Cottage Hospital was a charitable bequest; that this gift lapsed by reason of the termination of the life of said corporation prior to testatrix's death; that she had a dominant purpose to devote the residue of her estate to general charities of the type represented by the purposes for which the seven residuary corporations were chartered; that this general charitable intent can not be carried out by the particularly named Bristol Cottage Hospital and that its share of the charity should be administered *cy pres*. *St. James Church* v. *Wilson*, 82 N. J. Eq. 546.

The parties may on December 20, 1929, present a form of decree in conformity with this opinion.

*Henshaw, Lindemuth & Baker*, for complainant.

*Charles E. Tilley, Swan, Keeney & Smith*, for Bristol Cottage Hospital, &c.

*Edwards & Angell, Gurney Edwards, William H. Edwards, Ronald B. Smith*, for respondent Wooldridge.