WILLIAM C. POWERS, *Trustee et al. vs.* HOME FOR AGED WOMEN *et al.*

JUNE 18, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

324

Moss, J. This is the same suit in equity, for the construction of the fourth paragraph of the will of Laura C. Powers and for the determination of the proper disposal of a one-quarter share of a trust fund of $10,000, provided for in that paragraph, as was described and dealt with in our opinion in *Powers* v. *Home for Aged Women,* 55 R. I. 187, 179 A. 610. In that opinion we held that the question of the existence of a charitable trust governing this share was sufficiently involved and sufficiently doubtful to make it at least advisable that the attorney general of Rhode Island be made a party respondent.

In accordance with this holding the attorney general was made a party and entered his appearance and filed an answer. He therein denied that that provision of the fourth paragraph of the will above mentioned which directed the payment of this share to "the Teachers' Annuity Fund of said Providence" lapsed and became null and of no effect; and asserted in substance that the bequest in trust under that provisions became, at the death of the testatrix, a vested part of the fund, then in existence, by the name of the "Public School Teachers' Retirement Fund" of the city of Providence, (which will be hereinafter referred to as the teachers' retirement fund) and, because the existence of that fund has since terminated, should be paid to the Employees' Retirement System of the city of Providence, as the successor and assignee of the former fund.

The attorney general in his answer also asserted in substance that, if such bequest could not be carried out according to the provision in the will, because of not vesting in such former fund before the extinguishment of such fund, such bequest, as one for a general charitable purpose, should be applied to a similar charitable purpose in accordance with the *cy pres* doctrine.

All the facts that seem to us pertinent to the case have been set forth in our former opinion and many of them need not be herein repeated. The first question to be considered, arising on these facts, is whether the equitable bequest with which this case is concerned was made by the testatrix with a general public charitable purpose, with special interest in aiding in providing for retirement pay for the public school teachers of Providence. By the fourth paragraph of the will a valuable piece of real estate was devised in trust, and it was provided that at the termination of the trust on either one of two events, one or the other of which was sure to happen, the sum of $10,000, to be made up by the trustee out of the accumulated net income of such real estate, or, if necessary, in part from the proceeds of its sale, should be divided equally among three corporations, which are ad-

mitted by the parties to this case to be charitable, and the "Teachers' Annuity Fund of said Providence", by which, it is agreed, was meant the above teachers' retirement fund.

This was a fund, created by the school committee of Providence, under authority conferred upon it by act of the general assembly in 1897, for the payment of annuities to the public school teachers of Providence who might elect to come under the provisions of the act and might from time to time retire from service. By the act it was to be made up, and it was in fact made up, in part of sums deducted from the salaries of such teachers and in part of "moneys received from donations, legacies, gifts, bequests, or otherwise for or on account of said fund."

In our opinion it was a fund for public charitable purposes, and especially so as to moneys received from donations and the like. The beneficiaries were a shifting group of persons who had been engaged in a public calling, of the utmost importance to the public and especially to those who would be the future citizens of the state and whose families would be unable to furnish private means for their education. It is very doubtful if any one of those who would be beneficiaries from time to time would have any enforceable interest in any particular part of such fund, and he or she would certainly have no such interest in any part of the fund derived from bequests or other gifts to the fund.

That such bequests and gifts were practically invited by the general assembly is clear from the language of the act; and it is well settled that gifts in aid of free public education are gifts for charity in the legal sense of that term. *South Kingstown* v. *Wakefield Trust Co.*, 48 R. I. 27, 30, where this court says, with reference to a gift for that purpose: "Such a gift is one for a public charitable use highly favored in law and, when possible, supported by the courts." It can hardly be doubted that gifts in aid of a fund for the payment of life annuities, after retirement from service, to teachers who have grown old in faithful service in the public schools, are in aid of public education, by encouraging

competent persons to enter that calling and continue in it during the period when they can render the best service and then to retire and make way for others, and also by keeping up their morale in the meantime.

This court has more than once stated that in case of doubt whether a gift is charitable a construction favoring a public charity is preferred, and that the policy of the law is to uphold charitable bequests, and to give effect to them whenever possible. *Rhode Island Hospital Trust Co.* v. *Benedict,* 41 R. I. 143, 148, 103 A. 146; *City of Providence* v. *Payne,* 47 R. I. 444, 452, 134 A. 276; *Rhode Island Hospital Trust Co.* v. *Williams,* 50 R. I. 385, 148 A. 189. It has also been recognized by this court that a gift for the benefit of an indefinite number of persons "by erecting or maintaining public buildings or otherwise lessening the burdens of government" is a legal charity. *Kelly* v. *Nichols,* 18 R. I. 62, 65, 25 A. 840. It has repeatedly been held by courts of last resort that providing for retirement pay to public school teachers is a proper public function in aid of free education. *Attorney General* v. *Connolly,* 193 Mich. 499, 511, 160 N. W. 581; *State* v. *Hauge,* 37 N. D. 583, 164 N. W. 289; *State* v. *Levitan,* 181 Wis. 326, 193 N. W. 499.

Another element in the instant case in favor of holding this equitable bequest to have been made with a general charitable intent is the fact that it was one of four which were provided for in the same clause, to be paid equally out of a trust fund of $10,000, and the other three of which were to three charitable corporations and were clearly gifts for general charitable purposes, with the subsidiary special intent that they should be received and administered by the three corporations named. *Rhode Island Hospital Trust Co.* v. *Williams, supra.*

In view of the above considerations we are of the opinion that the bequest in question was clearly made with a general charitable intent and with the special, though perhaps subsidiary, intent that it be accepted and used in trust in aid of the payment of annuities to retired public school teachers

of Providence, without further specification as to just what teachers should be the beneficiaries. We do not find any evidence that the testatrix had any specific intent that if the bequest could not be used in aid of the payment of such annuities to such teachers in just the way provided for in the act creating the teachers' retirement fund, the bequest should fail. In fact she must have known that a considerable time would elapse after her death before the bequest would be payable and probably expected that in the meantime some changes in the method of raising and administering a fund for the benefit of retired teachers might be made.

The next question for consideration is whether the bequest, as an equitable interest in the trust estate under the fourth paragraph of the will, being the right to receive in future a certain sum derived from such trust estate, ever vested. In *City of Providence* v. *Payne, supra,* at page 454, it was held by this court that in this state, "unless prevented by legislative provision to the contrary, a municipality may act as trustee under a public charitable trust if the purposes of that trust are germane to the objects of the municipal incorporation." In the instant case the city of Providence, was, by the act providing for the teachers' retirement fund, the trustee of the fund, which so far as composed of money and securities was in the custody of the city treasurer, and the trust was administered by a board of trustees for the city.

The testamentary provision involved in the instant case, then, was substantially a direction to the trustee under the fourth paragraph of the will to pay to the city of Providence at the termination of his trust the sum of $2500, to be held by that city as trustee, subject to the charitable trust that it be applied for the purpose for which the teachers' retirement fund was created. At the date of the death of the testatrix, August 4, 1923, there had been passed chapter 489 of the public laws of 1923, by which, if approved by the voters of the city of Providence at the regular election to

be held in November 1924, a corporation to be known as the "Employees' Retirement System of the City of Providence" would be established and four funds would be created and maintained, two from contributions made by the teachers and most other classes of regular employees of the city government, and two from contributions made by the city itself, and out of which four funds annuities and pensions to retiring teachers and such other employees would be paid. These funds, if created, might supersede the teachers' retirement fund.

But at the death of the testatrix that fund was in existence and operation, with a substantial amount of assets in it, and the act governing it was in effect. There was at that time no assurance that the substantial parts of the superseding act would ever go into operation, and they did not in fact go into actual operation until early in 1925. At the death of the testatrix the city was the trustee of the teachers' retirement fund with full power to act as such and there was no reason why a bequest to be placed in that fund would not then vest in interest, though not in possession, in the city as such trustee, if the other three bequests, to be likewise paid out of the same fund of $10,000, would vest in interest in the three charitable corporations, then in existence, which would be the recipients of such bequests.

The rule is well settled in this state that the law favors the vesting of estates and that an estate or interest under a testamentary instrument will not be held contingent, unless the intent that it be so held is clearly manifest in the instrument. *Staples* v. *D'Wolf,* 8 R. I. 74, 118; *Rogers* v. *Rogers,* 11 R. I. 38, 72; *In re Norris,* 46 R. I. 57, 61; *Rhode Island Hospital Trust Co.* v. *FitzGerald,* 49 R. I. 319, 322; *Hayden, for an Opinion,* 51 R. I. 117, 118.

If the receipt of a bequest is not clearly made dependent on the happening of a contingency, the only case in which the postponement of the receipt of the bequest has been held to show an intention that it should not vest on the death of the testator seems to be the case where the post-

ponement is clearly for some reason personal to the legatee and where it is not for the convenience of the estate or for the benefit of other persons interested under the will. In every other sort of case of postponement the bequest will vest in estate or interest, only the actual receipt being postponed. The following cases illustrate the above rules as to vesting: *Pond* v. *Allen,* 15 R. I. 171, 178; *Codman* v. *Brigham,* 187 Mass. 310, 72 N. E. 1008; *Bosworth* v. *Stockbridge,* 189 Mass. 266, 75 N. E. 712; *Pearson* v. *Hanson,* 230 Ill. 610, 82 N. E. 813.

In our opinion the equitable bequests in the instant case for the benefit of the three charitable corporations vested in them, in interest, as of the date of the death of the testatrix; and in like manner the bequest in aid of the teachers' retirement fund vested, in interest, as of the same date, in the city of Providence in trust to be used in aid of the payment of annuities to retired or later retiring public school teachers of Providence, in accordance with the purpose for which that fund was created.

In March 1925, it was officially declared by the board of trustees in charge of that fund that it was insufficient to continue the payments which the retired teachers who were then its beneficiaries would receive under the plan then in operation; and therefore, in accordance with the new act, the cash and securities then in the fund were transferred into the later "pension accumulation fund," from which, under the new act, the above payments to those teachers would be kept up and payments to future retired Providence public school teachers, and to certain other classes of employees of that city who might retire, would be made, and which, except for the transferred cash and securities, would be derived from payments made by the city.

The statutory provision for this transfer indicates clearly that the general assembly, in passing the new act, was providing that the Employees' Retirement System, as an agency of the city, would be assuming, among its other duties, the duty of performing, with the new funds, substan-

tially the same purposes, for the benefit of retired and retiring public school teachers, as the city had been performing, through the school committee and the old board, with the teachers' retirement fund. We are, however, of the opinion that the bequest in question here did not then pass into the new pension accumulation fund, since the new act provided only for a transfer of "all cash and securities standing to the credit of such fund," referring to the teachers' retirement fund, and this bequest did not come within that description. We are also of the opinion, though we regard the question as a very close one, that the bequest did not, simply by reason of what had happened, become equitably a part of the pension accumulation fund.

Our view is that it continued to be vested in interest in the city, subject to the charitable trust by which it had been held, and that the question whether that trust could be later performed as to such bequest, or it could be administered *cy pres* under the direction of the superior court, would remain to be decided when the bequest became payable and the trust for the first time might become active. On that whole phase of the case, then, our conclusion is that because the bequest vested in interest as of the date of the death of the testatrix, there was no lapse and that there could be no lapse later, at least not in the strict sense.

When the bequest became payable, the question then arose whether the money to be received could be administered in trust under the original trust or *cy pres*. If not, there would be a failure of the trust and, since no gift over on failure of the trust was made, there would be a resulting trust for the benefit of other beneficiaries under the will.

The matter is stated thus in 2 Restatement of the Law, Trusts, §391, "Who Can Enforce a Charitable Trust," comment *f*: "The settlor or his heirs or personal representatives can maintain a suit to recover the trust property on the ground that the charitable trust has failed and that they are entitled to the property by way of resulting trust or reverter or right of entry for condition broken (see §§399,

401). So also, if there is a valid gift over upon the failure of the trust, the person to whom the gift over is made can maintain a suit to recover the property upon the ground that the trust has failed. In these cases the Attorney General is a necessary party."

The following comment *f*, in §399 of the same work, is applicable in the instant case: *"Initial and subsequent failure of particular purpose.* If property is given in trust to be applied to a particular charitable purpose, and at the time when the property is given it is possible and practicable and legal to carry out the particular purpose, but subsequently owing to a change of circumstances it becomes impossible or impracticable or illegal to carry out the particular purpose, it is easier to find a more general charitable intention of the settlor than it is where the particular purpose fails at the outset. The court can fairly infer an expectation on the part of the settlor that in course of time circumstances might so change that the particular purpose could no longer be carried out, and that in such a case the settlor would prefer a modification of his scheme rather than that the charitable trusts should fail and the property be distributed among his heirs who might be very numerous and only remotely related to him. The courts are therefore more ready to apply the doctrine of *cy pres* where the particular purpose fails at the outset. It is true, nevertheless, that the doctrine of *cy pres* is not always applicable where a charitable trust fails at a time after its creation, and a resulting trust may arise for the settlor or his estate; and it is true, conversely, that the doctrine of *cy pres* may be applied even though the particular purpose of the settlor fails at the outset."

The same distinction is very well brought out in *Brown v. Condit,* 70 N. J. Eq. 440, 61 A. 1055, in which the court held that the trust there in question had failed. At page 443 (1056) the court says: "This case at the start must be sharply distinguished from that large class of cases in which the intended gift to a charitable use has gone into effect upon

the death of the testator by the vesting of the gift in the donee, but the continuance of the charity has subsequently become impossible or impracticable on account of a change of conditions occurring after the death of the donor. In this last-mentioned class of cases the law to be investigated and applied relates to a possible reversion or resulting trust and to the *cy pres* power which a court of equity or the legislature may exercise."

In the instant case the general assembly has pointed the way for the use, under the present retirement system, of funds bequeathed for the former teachers' retirement fund, and we see no good reason why it cannot be followed by the judicial application of the doctrine of *cy pres*. See also *Codman* v. *Brigham, supra,* 313; *Rhode Island Hospital Trust Co.* v. *Williams, supra;* and an excellent note to the report of the latter case, in 74 A. L. R. 671, discussing that doctrine.

It may be that under the later statute the plan of the present employees' retirement system has been so well and so definitely worked out that each teacher in the system at any time has then definite and enforceable rights in the funds, so that the plan, as one operated by on or behalf of the city government, cannot properly be held to be a plan for charitable purposes. Yet a gift in aid of the better carrying out of the plan, as applied to teachers, would be one for the benefit of the public school system of the city, of pupils as well as teachers, and would, according to all the authorities on the subject, be a gift for a charitable purpose in the legal sense of that term. An example would be a bequest of a fund to be used in furnishing better care for the eyes of the public school pupils and teachers.

A large part of the brief filed in this case in behalf of the trustee and beneficiaries under the residuary clause of the will is taken up with a discussion of the opinion of this court in the case of *Gladding* v. *Saint Matthew's Church*, 25 R. I. 628, to which the authors liken this case. But there the court found, from the will and the circumstance in evidence,

that the testatrix had no general charitable intent, but solely an intent to benefit a particular church of which she had been a member but which had gone out of existence before her death. Here, on the contrary, we find, from a different testamentary provision and very different circumstances, that the testatrix had not only a general charitable intent, but a more specific one, which we believe can still be substantially carried out.

Here, moreover, as we have found, the bequest vested in interest, upon the death of the testatrix, in the city of Providence as trustee, subject to the trust that it should be used in aid of a plan for the payment of annuities to retired public school teachers of that city. Later a plan for the same purpose, but much better worked out and more comprehensive, including such teachers as a separate group and other separate groups of city employees as beneficiaries, was adopted; and it superseded the earlier plan and is now in full operation.

Therefore it seems to us that a method can and should be devised whereby the money now payable by the terms of this bequest would be used under a trust *cy pres*, in a manner which would well carry out the main purpose of the testatrix, to aid in the payment of retirement annuities to public school teachers of Providence, and that purpose only. Such method, as we view the matter, need not involve the permanent retention of the principal sum payable under the bequest, since we do not see that there was any provision in the act under which the teachers' retirement fund was established that required the permanent retention in that fund of money received from bequests and other gifts.

In this state original jurisdiction over the application of charitable trust funds under the *cy pres* doctrine is exclusively vested in the superior court. *Pell* v. *Mercer*, 14 R. I. 412; *City of Providence* v. *Payne, supra*, 455; G. L. 1923, chap. 303, sec. 9. Our conclusion, therefore, is that this case should be remanded to that court for the purpose of enabling it to exercise that jurisdiction herein.

336

. . So far as the opinion in *Carpenter for an Opinion,* 47 R. I. 461, 134 A. 16, is inconsistent with this opinion, that opinion is hereby overruled.

On June 23, 1937, the parties herein may present a form of decree in accordance with this opinion, for entry in the superior court.

*Greenough, Lyman & Cross, Richard E. Lyman,* for complainants.

*Archibald C. Matteson,* for Home for Aged Women.

*Ernest A. Jenckes, Swan, Keeney & Smith,* for Bethany Home of Rhode Island.

*Edgar J. Lanpher, Ronald C. Green, Jr.,* for Industrial Trust Co., Trustee.

*John P. Hartigan,* Attorney General, *John E. Mullen,* 4th Asst. Atty. G., for State.

*William B. Greenough,* for Young Women's Christian Association.

*Daniel E. Geary,* City Solicitor, for Employees' Retirement System of City of Providence.

(All attorneys of Providence.)