**PAYNE et al. v. CITY OF PROVIDENCE et al.**

No. 4471.

United States Court of Appeals First Circuit.

June 19, 1950.

Edwin H. Hastings, Providence. R. I. (Everett D. Higgins and Harold E. Staples, Providence, R. I., with him on the brief), for appellants.

James J. Corrigan, First Assistant City Solicitor, Providence, R. I. (William E. McCabe, City Solicitor, Providence, R. I., with him on the brief), for City of Providence et al., appellees.

Robert A. Coogan, Assistant Attorney General (William E. Powers, Attorney General, with him on the brief), for the Attorney General of Rhode Island, appellee.

Before MAGRUDER, Chief Judge, and CLARK[1] and WOODBURY, Circuit Judges.

CLARK, Circuit Judge.

"Feeling a strong attachment to my native Town & an ardent desire to ameliorate the condition of the poor & to contribute to their comfort & relief," Ebenezer Knight Dexter in 1824 devised this "Neck-farm"

1. Judge CLARK of the Second Circuit, serving by designation.

to the Town of Providence in fee simple forever, "to be appropriated to the accommodation & support of the poor of said Town in manner herein after mentioned & for no other use or purpose whatever." He then proceeded to set forth certain provisos and conditions for the erection and maintenance of suitable buildings, of which one required the erection, within twenty years after his death, of a "good permanent stone wall," eight feet high and three feet thick upon a foundation of small stones sunk two feet in the ground, to encircle his farm upon its exterior lines. These and other pertinent provisions of the Dexter will are quoted in full in the opinion of Chief Justice Sweetland for the Supreme Court of Rhode Island in City of Providence v. Payne, 47 R.I. 444, 134 A. 276, in rendering the court's decision in 1926 upon the city's bill against the Dexter heirs (the present plaintiffs) for construction of the will. It there appeared that the town, and later the city, had carried out the provisions of the will, even to the building of the ponderous wall, but that the farm could no longer be operated at a profit and the city desired to sell off, or to lease, a portion as building lots. The court considered this devise extensively, held that it created a charitable trust rather than an estate upon condition subsequent, concluded with "no hesitation" that it was not within the testator's intention that the town should sell any portion of the Neck farm or—particularly emphasizing the "massive barrier" of the wall as a "monument" disclosing his intent—lease any portion for house lots for residential purposes.

The meaning of that opinion and the extent of the adjudication then made has become the primary issue of this appeal. For the city has found it more difficult than ever to maintain this walled-in tract of 38.847 acres, mostly "vacant, unused land," as a poor farm and has brought a bill in equity in the state superior court representing that this trust for the maintenance of the poor is outmoded and inadequate and no longer useful or practical and asking for authority to sell the Neck farm free of the trust. Since the only respondent there

named was the Attorney General of Rhode Island, the testator's heirs have now brought this action in the district court, accepting the city's view that the trust has failed, or is about to fail, but praying for a decree of conveyance from the city to them on the basis that the failure leads to a resulting trust of the premises in their favor. The district court accepted the view of the defendants herein—the City, Mayor, and Freemen of Providence and the State Attorney General—that the earlier decision settled both the interpretation of the will and the applicability of cy pres and hence that the plaintiffs have no standing for the relief they prayed. Accordingly it dismissed the complaint on the city's motion and denied a further motion by the plaintiffs to amend. This appeal followed.

It is the position of the plaintiffs that the only issue before the court below and here is whether the will permits of the application of the equitable doctrine of cy pres or requires a return of the property to the testator's heirs on failure of the trust and that this issue was not determined by the state supreme court in the earlier action. Consequently as they are citizens of New York and New Jersey respectively, they are entitled to seek its adjudication in the diversity jurisdiction of the federal court. And, as they urge, it must be decided, under applicable law, upon the resolving of the problem whether the testator has disclosed a "general charitable intent" beyond that for the particular purpose stated, in which event only may it be carried out cy pres, or whether he had only the specific charitable intent for the particular object, upon the failure of which there must be a resulting trust for the heirs. Gladding v. St. Matthew's Church, 25 R.I. 628, 57 A. 860, 65 L.R.A. 225, 105 Am.St. Rep. 904, 1 Ann.Cas. 537; Wood v. Trustees of Fourth Baptist Church, 26 R.I. 594, 61 A. 279; Rhode Island Hospital Trust Co. v. Williams, 50 R.I. 385, 148 A. 189, 74 A.L.R. 664, 666, with annotation at 671; 2 Restatement, Trusts, § 413, 1935. Moreover, if the will "is not entirely clear, extrinsic evidence is proper to show the circumstances under which the will was ex-

ecuted and testatrix's knowledge of, and relationship to, the objects of her bounty." Rhode Island Hospital Trust Co. v. Williams, supra, 50 R.I. 385, 388, 148 A. 189, 190. Hence they seek a trial at which they may introduce such evidence and have the issue thus presented adjudicated. We are constrained to agree with their contention.

It will be noted that the earlier action sought only a construction of the testator's intent without presentation at that time of any issue as to the failure of the trust. The city did then seek a power of sale or lease of a part of the premises, and lost decisively. But the plaintiffs do not assert that this settled the issue of sale upon failure of the trust. They do say that the court expressly declined to pass upon it. And the words of the opinion appear to make this quite clear. For the court has this to say:

"At the hearing some reference was made to certain changes in conditions which have resulted in a reduction of the income from the asylum property. That is a circumstance which has no bearing upon the questions before us. The superior court under its chancery powers has jurisdiction over the administration of the trust created in the testator's Neck farm. If through change in circumstances the particular mode or scheme of the testator for carrying out his primary paramount intent has failed, or has ceased to be useful, the superior court, upon evidence establishing that fact, and after full consideration of the matter, has power to modify the testator's secondary plan that his general intent may be better effectuated. By section 9, c. 303, Gen.Laws 1923, the superior court is specifically given power to make a cy pres application of property held upon charitable trust, a power which it probably would have had without such statute under its plenary jurisdiction as a court of chancery. Pell v. Mercer, 14 R.I. 412. These matters are not involved in the case before us. We are called upon to determine simply the testator's intention, as expressed in his will, so far as it relates to the questions propounded by the complainant in the bill." City of Providence v. Payne, supra, 47 R.I. 444, 455, 134 A. 276, 281. And

then it goes on to decide without hesitation that the sale or lease then sought was not "within the intention of the testator." The questions propounded in the bill and answered in the negative by the court dealt solely with the power to sell or lease under the conditions then stated and to remove a portion of the wall for the purpose.

Defendants read this language as an acknowledgment by the court of a general charitable intent upon the part of the testator, of the kind to be effectuated cy pres when circumstances might so require, and they support this by a definition of the testator's "predominant purpose" earlier in the opinion as "to benefit the poor of his native town." Perhaps some such thought may have been in the back of the writer's mind, or perhaps he failed only to reveal carefully what his thoughts were, as even judges may sometimes do. Be that as it may, we do not see how we can take his express disclaimer, particularly bolstered as it is by the actual decision rendered, in anything less than its face value. It must mean that none of these matters were "involved in the case before us," not that perhaps some were, being drawn in by way of dicta. Moreover, the earlier matter dealing with the testator's purpose was in a different context, namely on the issue as to the nature of the devise as a trust or as an estate upon condition subsequent. It not only does not settle our present issue, but suggests the possibility of distortion when language used for one definite purpose is resorted to for something else also. Thus, the treatment of the "condition" or requirement as to the wall at this point might be thought quite inconsistent with the emphasis upon it later upon the direct issue of the testator's intent as to sale, or lease, unless the difference in the issue under discussion is kept in mind. Hence the context is important, as a fuller quotation will show, viz.:

"In support of their contention the respondent heirs lay stress upon that language of the seventeenth paragraph, wherein the testator provides that 'this devise is upon condition' that within 5 years after

his decease the town shall erect a building or buildings for the accommodation of the poor, and, again, 'this devise is upon this further condition' that within 20 years after his decease the town shall erect a wall as specified. Whether a devise creates a charitable trust or is a gift upon condition subsequent will be determined from the intent of the testator to be gathered from a consideration of the devise as a whole. The predominant purpose of this testator was to benefit the poor of his native town. It is not reasonable to conclude that he intended to make a gift upon condition subsequent whereby his benevolent purpose might fail, because some particular provision of his subordinate scheme for the administration of the gift was not strictly observed by the donee. The language referred to should not be regarded as a condition attached to the devise, but rather as the earnest expression of a direction to the town as to the mode of administration. While the words 'upon condition' are apt words to create a condition, they do not necessarily create such an estate. Stanley v. Colt, 5 Wall. 119, 72 U.S. 119, 18 L.Ed. 502. Conditions subsequent are not favored in the law; while in the case of somewhat doubtful language courts are inclined to construe a devise as a gift to public charity when such construction is possible." (Citing cases.) City of Providence v. Payne, supra, 47 R.I. 444, 452, 134 A. 276, 280.

The city filed certain affidavits below from its law officers then engaged in the case designed to show that wider issues were then presented to the court and specifically that the then defendants and present plaintiffs claimed a resulting trust in their favor at that time. Such a showing at best could hardly overcome the court's own disclaimer as to the extent of its decision. But upon their own statements we think the contention of these officers is not justified. For they point out that the plaintiffs in their then pleadings claimed an interest either as a possibility of reverter after a determinable fee or a right of entry after an estate upon condition subsequent. These were, of course, the claims which the court did overrule in holding that the devise created a charitable trust. In their briefs these plaintiffs further stated that a sale or lease would terminate the trust and give rise to a resulting trust in favor of the Dexter heirs. This claim is wholly consistent with their present contention and can hardly be found denied by a decision refusing to permit the trustee-city to make a sale or lease of any part of the premises.

Hence the plaintiffs are entitled to their day in court, whatever may be the ultimate outcome of the case. And since they are not parties to the pending state court action, and diversity of citizenship is present, they are entitled to it here. Although application of trust funds cy pres is a matter for the specific court to which such chancery powers are committed, it seems clear that the federal court has power to decide the issue as to the claims of the heirs, that is, whether there is any room for application of the doctrine. Long v. Union Trust Co., D.C.Ind., 272 F. 699, 703; Tincher v. Arnold, 7 Cir., 147 F. 665, 672, 7 L.R.A.,N.S., 471, 8 Ann.Cas. 917; John v. Smith, 9 Cir., 102 F. 218; McDonogh's Ex'rs v. Murdoch, 15 How. 367, 56 U.S. 367, 14 L.Ed. 732; Fontain v. Ravenel, 17 How. 369, 58 U.S. 369, 15 L.Ed. 80. While these cases so imply, they do not definitely decide that the execution of a trust cy pres is for the state court; but since that issue is not immediately before us, we need not pass upon it. In Re President and Fellows of Harvard College, 1 Cir., 149 F.2d 69, this court has emphasized that except in the specific matters there referred to resting upon Supreme Court precedents, a federal judge in a diversity action cannot withhold a decision to which the parties are entitled, even though it may turn upon issues of state law. This case differs, however, in that here the state case was fully pending and hence judicial convenience might well be served by the inclusion of all issues in it. Hammett v. Warner Bros. Pictures, Inc., 2 Cir., 176 F.2d 145. Further, the entwining of the issue here with that of cy pres (the latter belonging to the state court) suggests that integrated judicial action might, initially at least, have been desirable. Sullivan v. Title Guarantee & Trust Co., 2 Cir., 167 F.2d 393. But

the defendants take the position that the plaintiffs have no proper standing in the state proceeding, the plaintiffs express fear that they would be denied admittance there, as they state has been the fate of other putative heirs who have sought to intervene, and the state case is apparently already completed and awaiting judgment. This does not mean that should circumstances hereafter develop suggesting a welcome for these plaintiffs in the state court litigation and an opportunity there for the definite adjudication of their claims, the district court may not then have discretion to act. Unless or until such development occurs, the district court must proceed to adjudication without reference to the state action which, as presently proceeding, cannot bind these plaintiffs.

The judgment is reversed and the action is remanded to the District Court for further proceedings consistent with this opinion. The appellants recover costs on appeal.