# STATE OF NORTH DAKOTA, EX REL. JOHN A. HAIG,
Clara Struble, P. S. Berg, John Steen, E. J. Taylor, as Members of and as the Board of Trustees of the Teachers' Insurance and Retirement Fund, v. A. E. HAUGE, as County Treasurer of .Ransom County.

(L.R.A.1918A, 522, 164 N. W. 289.)

County tuition fund — county treasurer — to set aside — teacher's insurance and retirement fund — act — constitutionality — tax action — object of — law shall distinctly state.

1. Section 1515 of the Compiled Laws of 1913 as amended by chapter 140 of the Laws of 1915, which provides that each county treasurer shall set aside from the county tuition fund and transmit to the state treasurer a sum equal to 10 cents for each child of school age in his county, and that the state treasurer shall credit such money to the teachers' insurance and retirement fund, is not unconstitutional or violative of the provisions of § .175 of article 11 of the Constitution of North Dakota, which provides that "no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Public school teachers — pensioning — tax levied for — constitutional.

2. A tax which is levied for the purpose of pensioning the public school teachers of a state is not unconstitutional nor in conflict with § 185 of article 12 of the Constitution of North Dakota, which provides that "neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor."

Taxes — levied for general school purposes — teachers' fund — in aid of — legislative act — authorization — germane to original purpose — constitutional.

3. A subsequent authorization by the legislature of the use of a portion of a tax which is levied for general school purposes to aid in the creation of a teachers' pension fund is germane to the general purposes for which the tax was originally authorized, and is not in violation of § 175 of the Constitution of North Dakota, which provides that "no tax shall be levied except in

NOTE.—On constitutionality of Teachers' Pension Act, see annotation of this case in L.R.A.1918A, 526.

On power of legislature to require municipality to pension teachers, see note in 34 L.R.A.(N.S.) 608.

pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

**Revenues of state — expenditures — exact enumeration of — Constitution does not require.**

4. An exact enumeration of all of the items of expenditures to which the revenues of the state may be applied is not required by § 175 of the Constitution of North Dakota.

**Taxes levied — for general school purposes — expended in the taxing district — where collected — not required — teachers' pension fund — created by taxes — levied generally — throughout state — constitutional.**

5. There is no constitutional requirement in North Dakota that taxes levied for a general public purpose must be expended and disbursed in the taxing district in which they are collected, and no valid objection can be made to a state teachers' pension fund on account of the fact that the taxes are collected generally throughout the state and the pensions are not always paid to teachers who reside in the county or district where the tax is paid or collected.

**State teachers' fund — establishment of — is a public purpose — within legislative power.**

6. The establishment of a state teachers' pension fund is a public purpose and enterprise, and within the power of the state legislature.

Opinion filed July 28, 1917.

Mandamus to compel the county treasurer of Ransom county to set aside and transmit to the state treasurer the sum required for the state teachers' insurance and retirement fund.

Appeal from the District Court of Ransom County, Honorable *Frank P. Allen,* Judge.

Judgment for plaintiff. Defendant appeals.

Affirmed.

*J. V. Backlund,* for appellant.

The state treasurer shall credit all moneys received in accordance with this section to the fund designated as the teachers' insurance and retirement fund. Comp. Laws 1913, § 1224.

No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied. Const. art. 2, § 175.

Taxes which are set apart by the Constitution of the state for particular uses cannot be diverted by the legislature to any other purpose.

People ex rel. Kaskaskia River Nav. Co. v. Lippincott, 65 Ill. 548; People ex rel. Becker v. Miner, 46 Ill. 384; National Bank v. Barber, 24 Kan. 534; Chambe v. Durfee, 100 Mich. 112, 58 N. W. 661; Board of Education v. Macon County, 137 N. C. 310, 49 S. E. 353; State ex rel. Coleman v. Smith, 8 S. C. 127; Nashville v. Towns, 5 Sneed, 186; 45 Century Dig. title Taxation, No. 1738.

The state has no power to divert the funds and moneys received from the citizens of one county by taxation, to the use and benefit of citizens of another county. Yamhill County v. Foster, 53 Or. 124, 99 Pac. 286; Hubbard v. State, 65 Ohio St. 574, 58 L.R.A. 654, 64 N. E. 109; Wright v. Hart, 182 N. Y. 330, 2 L.R.A.(N.S.) 338, 75 N. E. 404, 3 Ann. Cas. 263.

A written constitution is not only the direct and basic expression of the sovereign will, but is the absolute rule of action and decision for all departments and offices of government in respect to all matters covered by it, and must control. Wright v. Hart, supra.

The Constitution of each state, so far as it is consistent with the Federal Constitution, is the fundamental law of the state, and acts passed by the legislature inconsistent therewith, are invalid. East St. Louis v. Amy (East St. Louis v. United States) 120 U. S. 600, 30 L. ed. 798, 7 Sup. Ct. Rep. 739; Com. v. International Harvester Co. 131 Ky. 551, 133 Am. St. Rep. 256, 115 S. W. 703; Chicago, B. & Q. R. Co. v. Gildersleeve, 219 Mo. 170, 118 S. W. 86, 16 Ann. Cas. 749; State ex rel. Woods v. Tooker, 15 Mont. 8, 25 L.R.A. 560, 37 Pac. 840; State v. Theriault, 70 Vt. 617, 43 L.R.A. 290, 67 Am. St. Rep. 695, 41 Atl. 1030; McPherson v. Blacker, 92 Mich. 377, 16 L.R.A. 475, 31 Am. St. Rep. 587, 52 N. W. 469.

The courts should never allow a change in public sentiment to influence them in giving a construction to a written constitution not warranted by the intention of its founders. 6 R. C. L. 46; Cory v. Carter, 48 Ind. 327, 17 Am. Rep. 738; Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60; Tuttle v. National Bank, 161 Ill. 497, 34 L.R.A. 750, 44 N. E. 984; State ex rel. Crow v. Hostetter, 137 Mo. 636, 38 L.R.A. 208, 59 Am. St. Rep. 515, 39 S. W. 270; State v. Atlantic Coast Line R. Co. 56 Fla. 617, 32 L.R.A.(N.S.) 639, 47 So. 969; Jarrolt v. Moberly, 103 U. S. 580, 26 L. ed. 492; State ex rel. Board of Educa-

tion v. Brown, 97 Minn. 402, 5 L.R.A.(N.S.) 327, 106 N. W. 477;
Wilkes County v. Call, 123 N. C. 308, 44 L.R.A. 252, 31 S. E. 481.

The intention to which force is to be given is that which is embodied
and expressed in the constitutional provisions themselves; and words or
terms in a constitution, being dependent on ratification by the people,
must be understood in the sense most obvious to the common under-
standing at the time of adoption. Miller v. Dunn, 72 Cal. 462, 1
Am. St. Rep. 67, 14 Pac. 27; Bishop v. State, 149 Ind. 223, 39 L.R.A.
278, 63 Am. St. Rep. 279, 48 N. E. 1038; Leavenworth County v.
Miller, 7 Kan. 479, 12 Am. Rep. 425; Hale v. Everett, 53 N. H. 9,
16 Am. Rep. 82; Henry v. Cherry, 30 R. I. 13, 24 L.R.A.(N.S.)
991, 136 Am. St. Rep. 928, 73 Atl. 97, 18 Ann. Cas. 1006.

It is presumed that words appearing in a constitution have been used
according to their plain, natural, and usual import. Gibbons v. Ogden,
9 Wheat. 1, 6 L. ed. 23; Brown v. Maryland, 12 Wheat. 419, 6 L. ed.
678; Holmes v. Jennison, 14 Pet. 540, 10 L. ed. 579; Tennessee v.
Whitworth, 117 U. S. 139, 29 L. ed. 833, 6 Sup. Ct. Rep. 649; McPher-
son v. Blacker, 146 U. S. 1, 36 L. ed. 869, 13 Sup. Ct. Rep. 3; South
Carolina v. United States, 199 U. S. 437, 50 L. ed. 261, 26 Sup. Ct.
Rep. 110, 4 Ann. Cas. 737; Powell v. Spackman, 7 Idaho, 692, 54
L.R.A. 378, 65 Pac. 503; State ex rel. Childs v. Sutton, 63 Minn.
147, 30 L.R.A. 630, 56 Am. St. Rep. 459, 65 N. W. 262; Martin v.
Hunter, 1 Wheat. 304, 4 L. ed. 97; Craig v. Missouri, 4 Pet. 410, 7
L. ed. 903; State ex rel. Childs v. Sutton, 63 Minn. 147, 30 L.R.A.
630, 56 Am. St. Rep. 459, 65 N. W. 262.

Where a statute is in violation of the fundamental law, it is not only
the right, but the duty, of courts to declare such act unconstitutional.
Nashville v. Cooper, 6 Wall. 250, 18 L. ed. 852; Union P. R. Co. v.
United States, 99 U. S. 700, 25 L. ed. 496; Lottery Case (Champion
v. Ames) 188 U. S. 321, 47 L. ed. 492, 23 Sup. Ct. Rep. 321, 13 Am.
Crim. Rep. 561; State v. Travelers' Ins. Co. 73 Conn. 255, 57 L.R.A.
481, 47 Atl. 299; Seaboard Air Line R. Co. v. Simon, 56 Fla. 545,
20 L.R.A.(N.S.) 126, 47 So. 1001, 16 Ann. Cas. 1234; Flint River
S. B. Co. v. Foster, 5 Ga. 194, 48 Am. Dec. 248.

*William Langer,* Attorney General, *H. A. Bronson,* Assistant At-
torney General, and *E. B. Cox,* Special Assistant, for respondents.

In twenty-one states the teachers' pension fund system exists, and is

supported by public funds in part, and by contributions from the public school teachers, the same as is provided for by the act in question. The act in no respect violates the provisions of our Constitution. Const. art. 2, § 175, art. 12, § 185.

Pensions differ from salaries in that the pensioner is not under any obligation to render any service for his pension. Wilgus, Constitutionality of Teachers' Pension Legislation, 11 Mich. L. Rev. 451.

In levying taxes under an act like the one here in question, when the question of constitutionality is raised, the test is, Will it serve a recognized object of government, and will it promote the welfare of the people of the state in equal degree? Beach v. Bradstreet, 85 Conn. 344, 82 Atl. 1030, Ann. Cas. 1913B, 946.; United States v. Hall, 98 U. S. 343, 25 L. ed. 180.

All colleges, universities, and other educational institutions of our state are under the absolute and exclusive control of the state. Const. § 152.

The act in question is for the general good of the public; it was within the power of the legislature to enact such a law; its object is certain, and its intended relief is general in its application, and in no manner does violence to the Constitution. Const. § 175; Stinson v. Thorson, 34 N. D. 372, 158 N. W. 351.

"Taxes can be collected only for public purposes. Citizens of this state are doubtless entitled to have their property assessed in the place designated, and only for the purposes permitted by the Constitution. But we are aware of no constitutional requirement that taxes levied for a general public purpose must be expended or disbursed in the district in which they are collected." State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A. —, —, 156 N. W. 561; Const. §§ 176, 179.

BRUCE, Ch. J. The purpose of this action is to test the validity of the so-called Teachers' Insurance and Retirement Fund Act. It comes before us on an appeal from a judgment directing and commanding the defendant, as county treasurer of Ransom county, to set aside from the county tuition fund a sum equal to 10 cents for each child of school age, and to transmit the same to the state treasurer as required by § 1515 of the Compiled Laws of 1913 as amended by chapter 140 of the Laws of 1915.

Section 1515 as amended provides: "Each county treasurer shall annually set aside from the county tuition fund a sum equal to 10 cents for each child of school age in his county and shall transmit this sum to the state treasurer in the same manner that others are transmitted to the state treasurer at the same time that he transmits the funds received from the school boards and the boards of county commissioners in accordance with § 19, and shall certify under oath to the board of trustees of the teachers' insurance and retirement fund the amount so transmitted to the state treasurer. The state treasurer shall credit all moneys received in accordance with this section to the fund designated as the teachers' insurance and retirement fund."

The other provisions of the so-called Teachers' Insurance and Retirement Fund Act provide for an assessment on the wages of the teacher to a small amount, which is retained out of his salary. They further provide that these assessments, as well as the 10 cents for each child paid out of the county-tuition fund, shall be transmitted to the state treasurer, and together make up the general insurance or pension fund. See chap. 251 of the Laws of 1913 as amended by chap. 140 of the Laws of 1915. See also §§ 1495–1528 of the Compiled Laws of 1913.

The sections creating the county-tuition fund, from which the payment to the teachers' fund is authorized, are as follows:

Section 1224 (Compiled Laws of 1913): "The county auditor of each county shall at the time of making the annual assessment and levy of taxes levy a tax of $1 on each elector in the county for the support of public schools, and a further tax of 2 mills on the dollar on taxable property in the county, to be collected at the same time and in the same manner as other taxes are collected, which shall be apportioned by the county superintendent of schools among the school districts of the county."

Section 1225: "It shall be the duty of the county auditor on or before the third Monday in February, May, August, and November in each year, to certify to the county superintendent of schools the amount of such county-tuition fund, which the county superintendent of schools shall apportion among the several school districts in the same manner as provided for the apportionment of the state-tuition fund. The county superintendent shall file with the county auditor and

the county treasurer a certified statement showing the amount appor- tioned to each district."

The defendant and appellant contends that chapter 251 of the Laws of 1913, as amended by chapter 140 of the Laws of 1915, or the so- called Teachers' Insurance and Retirement Fund Act, is unconstitu- tional. He maintains that it is in conflict with § 175 of article 11 of the Constitution of North Dakota, which provides that "no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

He maintains that the act, though attempting to create a teachers' insurance and retirement fund, does not provide for the levy of the tax directly, but attempts to reach into a fund created for another purpose to carry out its object. He contends that persons who have served as teachers for a specified number of years, regardless of the place or places where their services were actually rendered, are entitled to the benefits of the act. He submits that a person teaching in a school in one part of the state is not giving his service to the support of the schools in another part of the state, or, in other words, funds raised by taxation for the support of the schools in one county are used for past or present services performed in another county; and this he claims cannot be done. He maintains that the county tuition fund, created by § 1224 of the Compiled Laws of 1913, and from which the payment to the teachers' insurance fund is sought to be made, is a local tax, which is provided for a local purpose, that is to say, for the use of the respective school districts; and that when a portion of it is taken for a general fund, such as the state teachers' insurance and retirement fund, and distributed among teachers throughout the whole of the state, such moneys are unlawfully diverted.

We find no merit in any of the propositions urged. Section 1224 of the Compiled Laws of 1913, and which creates the tuition fund, appears as § 102 of chapter 62 of the Laws of 1890 and later as § 117 of chapter 266 of the Laws of 1911. The last chapter was a care- fully prepared codification of the school laws of the state. Its title is: "An Act to Provide a System of Free Public Schools for the State of North Dakota."

It is very clear from a perusal of the whole act that it was not local

in its nature, nor was education deemed to be local in its nature, but an affair and concern of the whole state. It is also clear that, in maintaining the schools and in levying the taxes therefor, the counties and localities are merely acting as agencies of the sovereign state. Section 1224 of the Compiled Laws of 1913 does not, as contended by counsel for appellant, authorize the levy of these taxes by or for the use of the districts, or for a local purpose. The purpose is a state purpose, which recognizes the value of an intelligent citizenship, and is, to a large extent, that poor districts shall have a fund which is outside of, and not dependent upon, their own territory. It is levied by the county, and not by the school districts. The apportionment is not made in accordance with the values of the property in the respective school districts, but in accordance with the number of school children of school age residing therein. Furthermore, it is provided that no apportionment can be made, unless the requirements of § 1216 of the Compiled Laws of 1913 as to the length of the school year, etc., have been complied with. The statute, in short, is an act of the legislature, and not of the locality. It is an exercise of the state taxing power. It furnishes a donation to the respective schools and a fund for the common-school purposes. Such being the case, there is no reason whatever why a portion of this fund may not be used in the payment of the teachers' pensions, provided that purpose is a general public school purpose; and that the purpose is a public school purpose we have no doubt.

The "power to grant pensions," says the Supreme Court in United States v. Hall, 98 U. S. 343, 25 L. ed. 180, "is not controverted, nor can it well be, as it was exercised by the states and by the Continental Congress during the War of the Revolution; and the exercise of the power is coeval with the organization of the government under the present Constitution, and has been continued without interruption or question to the present time." Under this broad interpretation of promoting the general welfare, there is no doubt that Congress can provide pensions for civil officers *or for the school-teachers of our land,* and that the encouragement of education is a public purpose inextricably connected with the general welfare policies of our nation and states. See also Brodhead v. Milwaukee, 19 Wis. 658, 88 Am. Dec. 711. See also discussion and cases cited in State ex rel. Linde v. Taylor, 33 N. D. 76, 117, L.R.A. —, —, 156 N. W. 561.

If public education and the granting of pensions to teachers is a function of the Federal government and within its implied powers, how much more must the pensioning of teachers be a function of the several state governments, whose powers are not delegated, but inherent? That education is a matter of public concern, indeed, needs no argument. The premise was laid in the famous northwest ordinance which is copied in § 147 of our Constitution, and which provides:

"A high degree of intelligence, patriotism, integrity and morality on the part of every voter in a government by the people being necessary in order to insure the continuance of that government, and the prosperity and happiness of the people, the legislative assembly shall make provision for the establishment and maintenance of a system of public schools which shall be open to all children of the state of North Dakota, and free from sectarian control. This legislative requirement shall be irrevocable, without the consent of the United States and the people of North Dakota."

Surely, the providing of a permanent teachers' insurance fund which shall give dignity to the profession, encourage persons to enter into it, and provide for old age, is a "provision for the establishment and maintenance of a system of public schools."

A tax levied for this purpose is not a donation to any person, nor is it forbidden by § 185 of article 12 of the Constitution, which provides that "neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for [the] necessary support of the poor, etc."

It is merely in the nature of an added salary allowance to public servants. If all of the people of the state may be taxed to pay the salaries of the state superintendent of public instruction and the state high school inspector, whose duties are largely to supervise the schools and their teachers, if they may be taxed to support the normal schools and the state universities, which train teachers, they may certainly also be taxed in order to provide a fund which shall increase the efficiency of the teachers themselves, and aid and encourage them to devote their lives to a profession which, though essential to our civilization, has been but poorly encouraged, and has too often been merely looked upon as a stepping stone to other employments.

Nor does the act in any manner violate § 155 of the Constitution, which provides that "no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

The use of a portion of the county-tuition fund for the formation of a teachers' retirement fund is germane to the general purposes for which the county-tuition fund was raised. It was for school purposes. The purpose of chapter 266 of the Laws of 1911, and the purpose of the levying of the tax, was, as given by its title, "To Provide a System of Free Public Schools for the State of North Dakota." All that the act creating the pension fund does is to state how some of this money shall be used. The granting of pensions is germane to the general purpose of the general act. An exact enumeration of all the items of expenditure to which the revenue of the state may be applied is neither practical nor required by the constitutional provision cited. See Stinson v. Thorson, 34 N. D. 372, 158 N. W. 351; 27 Cyc. 728.

Nor, as we have before said, is there any merit in the contention that the residents of one district will be compelled to pay taxes for the support of teachers in another. As was said by Judge Christianson in the case of State ex rel. Linde v. Taylor, 33 N. D. 76, 116, L.R.A. —, —, 156 N. W. 576: "We are aware of no constitutional requirement that taxes levied for a general public purpose must be expended and disbursed in the taxing district in which they are collected. If this were true, every department, not only of the state, but also of county government, would soon cease to operate."

The judgment of the District Court is affirmed."

ROBINSON, J. (dissenting). The purpose of this suit is to compel the county treasurer of Ransom county to annually transmit to the state treasurer from the county tuition fund a sum equal to 10 cents for each child of school age. The county treasurer appeals from an order and judgment sustaining a demurrer to the complaint.

The action is based on chapter 251, Laws of 1913. It is an action to create a teacher's pension fund, and to pension such teachers as may serve for a certain number of years and contribute to the fund a certain percentage of their salary. As there are few who are so stupid as to make of teaching a life business, the chances are that one hundred

persons must contribute to the fund for every person who wins a prize or pension. Hence, the action does in effect provide for a kind of lottery. One great objection to the lottery scheme was that the expense of administration amounted to 48 per cent. The same objection applies to the handling of the teachers' pension fund. The scheme is petty, wasteful, and expensive. It has nothing to commend it. The teacher is fairly well paid, and his business is not in any way laborious or hazardous. It affords more leisure than any industrial business. In each week the teacher has only thirty working hours, which are reduced by holiday vacations.

The action in question seems in direct conflict with these provisions of the Constitution:

The legislative assembly shall have no power to authorize lotteries or gift enterprises for any purpose.

No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied.

Neither the state nor any county, city, township, town, or school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual.

Taxes shall be levied and collected for public purposes only.

Now calling it by any name, the giving of a prize, donation, or gift to a school-teacher is not giving it for public purposes. And such giving by the state, county, or any political subdivision is directly prohibited. Were it competent to give such prizes or pensions to the school-teaching class, it would be equally competent to give them to the clergy, the farming class, or to any other class of persons. The act in question does not purport to impose a tax on any person or municipality, but it directs that a part of the tax which has been imposed by law for educational purposes shall be diverted and applied to the giving of prizes or pensions.

Now, under the Constitution, every law imposing a tax must state distinctly the object of the same, to which only it shall be applied. Hence, we need not argue that when a tax is levied for one purpose the legislature may not pass an act diverting it to any other purpose. The conclusion is that the act in question does contravene the Constitution, and it is void.