Argued October 13; reargued November 10; reversed
November 14, 1939

# SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY *v.* TEACHERS' RETIREMENT FUND ASSOCIATION

(95 P. (2d) 720)

In Banc.

*John D. Galey,* of Portland (Beckman & Galey, of Portland, on the brief), for appellant.

*Grant T. Anderson,* of Portland (Ralph H. King, of Portland, on the brief), for respondent.

BEAN, J. The defendant, The Teachers' Retirement Fund Association, hereafter referred to as the association, was incorporated in 1912 as an Oregon nonprofit corporation, pursuant to chapter 280, Oregon Laws, 1911, now section 35-2701, Oregon Code 1930, et seq. By virtue of section 35-2706, Oregon Code 1930, as amended in 1929, all teachers employed by the plaintiff, hereafter referred to as the district, after July 1,

1929, automatically became members of the defendant association.

By section 35-2707, Oregon Code 1930, the district is bound to pay to the association such sums of money as may be required to enable the association to pay to each member of the association annuities in accordance with said section, which provides in part as follows:

"If said board of directors shall find that said association has a reserve not lower than the usual reserve computed by the American experience table of mortality and 4 per cent interest, the said board of school directors shall pay to said association the 3 per cent of tax money, hereinbefore referred to, as fast as it is received by said school district, and such additional sums of money, if any, as may be required to enable said association to pay to such retired members thereof from the total of said payments so made to it by said school district the following sums, to wit:

\*　　\*　　\*　　\*　　\*

(d) To each member under the age of 60 years, who shall become disabled, either as the result of illness or accident, after this act takes effect, to the extent that he or she is, and probably will be, unable thereafter to perform his or her duties as a school teacher, a sum, monthly, equal to the difference between $75 and the amount of the monthly annuity which said member's contributions to said association will purchase on the basis of the full scale of payments established by said association for members of like age; provided, no payments under this subdivision shall be made until after such member has been totally disabled for a period of five months; and provided further, that in the event of the removal of such total disability further payments hereunder shall cease. Annually the board of directors of the district shall make timely determination of the amount of moneys, if any, which is to be paid by the district, in addition to said 3 per cent of the amount of tax received by said school district, and shall provide in the annual budget of the district for and levy a tax for

said moneys. All said moneys shall be paid at such time or times as moneys of the district are available therefor, and as may be necessary to enable the association to make the payments to its members herein provided for."

On or about May 25, 1936, the board of directors of the district duly adopted a rule that required every applicant for a teaching position in the schools of its district to take a medical examination from one or more designated medical examiners as a condition precedent to his or her employment as a teacher, which rule has not been abrogated. The purpose of the rule is claimed by the district to be two-fold: (1) To determine a prospective teacher's physical qualifications to discharge the duties of a teacher, and (2) to determine whether such prospective teacher suffers from some existing physical impairment likely to result in permanent disability at any time. In those instances where such an examination revealed a physical condition which then constituted or might thereafter cause a physical disability, the district required the execution by the applicant of an instrument of waiver, whereby the applicant agreed to "waive any and all claim for disability benefits from the Teachers' Retirement Fund Association for any illness or disease arising from or connected with any impairment" mentioned in connection with the examination.

The association asserts that these waivers are void. The district commenced this declaratory judgment proceeding to establish their validity. The trial court overruled the defendant's demurrer to the complaint, holding that the waivers were valid. The association submits that the waivers in suit are contrary to public policy and therefore void.

The district contends that it is empowered to employ teachers and to make rules and regulations for the government of the district under and by virtue of section 35-1315a, Oregon Code Supplement, 1935; that the power to employ teachers and make rules and regulations for the government of the district conveys implied power to determine by reasonable means an applicant's physical qualifications to discharge the duties of a teacher, since the power to employ cannot be intelligently exercised otherwise; that an applicant may be physically incapable of discharging such duties or he may be the carrier of communicable tuberculosis, or other communicable diseases, in which case the public health is directly concerned; that the power to employ teachers, and to make rules and regulations for the government of the district, conveys implied power to determine an applicant's desirability from the standpoint of the financial obligation the district will assume thereby. Whenever a teacher of the district becomes disabled to the extent that he or she is and probably will be unable thereafter to discharge the duties of his or her employment, the law provides disability benefits for such teacher payable out of funds of the district: § 35-2707, Oregon Code 1930, as amended by Oregon Laws 1939, ch. 287.

■ It is assigned that the court erred in overruling defendant's demurrer to the complaint. The defendant association contends that the waivers in suit are contrary to public policy and therefore void; that a private right given for the public good cannot be waived contemporaneously with its first application to the facts: *Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 298 P. 705, 79 A. L. R. 29, and note p. 33; *Federal Nat. Bank v. Koppel*, 253 Mass. 157, 148 N. E. 379, 40

A. L. R. 1443; *Alcolea v. Smith*, 150 La. 482, 90 So. 769, 24 A. L. R. 815; *Peugh v. Davis*, 96 U. S. 332, 24 L. Ed. 775. An anticipatory waiver of this kind is to be distinguished from an executed waiver: *De Boest v. Gambell*, 35 Or. 368, 58 P. 72. The donee of a private right created by statute for the public good has not the legal power to waive such right: *Bunker v. Coons*, 21 Utah 164, 60 P. 549, 81 Am. St. Rep. 686; *Glendale v. Coquat*, 46 Ariz. 478, 52 P. (2d) 1178, 102 A. L. R. 837; *Cato v. Grendel Cotton Mills*, 132 S. C. 454, 129 S. E. 203, 41 A. L. R. 439, 441.

■ The requirements of a statute enacted for the public good may not be nullified by private contract: *Central R. Co. v. Mauser*, 241 Pa. 603, 88 Atl. 791, 49 L. R. A. (N. S.) 92. Statutory contracts of the public with individuals may not be varied by private contract: *Lukens v. Nye*, 156 Cal. 498, 105 P. 593, 36 L. R. A. (N. S.) 244, 249, 20 Am. Cas. 158; *Murphy v. Prendergast*, 164 N. Y. S. 213, 99 Misc. 326. The statute creating the disability annuity was enacted for the public good within the meaning of the foregoing rule: *Zumpfe v. Gentry*, 153 Ind. 219, 54 N. E. 805; *Mitchell v. Automobile Sales Co.*, 161 Tenn. 1, 28 S. W. (2d) 51, 83 A. L. R. 955, 957, 959; *Phelps v. Phelps*, 72 Ill. 545, 22 Am. Rep. 149.

■■ The public interest is included in the statutory contract in suit by reason of the devotion of public funds to the statutory purpose: *Bowler v. Nagel*, 228 Mich. 434, 200 N. W. 258, 37 A. L. R. 1154 and note; *State ex rel. Haberlan v. Love*, 89 Neb. 149, 131 N. W. 196, 34 L. R. A. (N. S.) 607 and note, Ann. Cas. 1912 C, 542; *State ex rel. Haig v. Hauge*, 37 N. D. 583, 164 N. W. 289, L. R. A. 1918A, 522 and note. The public policy of the state is fixed and indicated by the constitution and

statutes and by the decisions of the courts: *Tarbell v. Rutland R. Co.*, 73 Vt. 437, 51 A. 6, 56 L. R. A. 656, 87 Am. St. Rep. 734.

It is a well-known doctrine that there are some contracts which the law does not permit individuals to make. The association submits that the waivers in suit are such contracts. There are some rights which the law does not permit an individual to barter away.

In *Motor Contract Co. v. Van Der Volgen*, supra, it appeared that defendant had purchased an automobile under a contract by which he waived "all counterclaims or claims for recoupment, or any and all other claims of any kind not appearing upon the face of this contract, or for misrepresentation or otherwise, as against any assignee for value * * *." The court held that such a provision did not cut off the defenses of fraud and usury, since to recognize the agreement as valid would violate the public policy of the state and nullify the objects of the negotiable instruments act and the usury law, saying:

"While the appellant may decline to take advantage of a privilege given to him by the statute—the defense of usury—he may not bind himself by contract that he will not avail himself of a right which the law has allowed to him on grounds of public policy."

In *Federal Nat. Bank v. Koppel*, supra, the court held void a clause on a promissory note which read: "Waiving all benefits of whatever kind or nature that any laws give or intend to give for the advantage or protection of the maker hereof," saying, "It would be vain to enact a bankruptcy law with all its elaborate machinery for settlement of the estates of bankrupt debtors, which could so easily be rendered of no effect."

In *Tarbell v. Rutland R. Co.*, supra, the court held void, as contrary to public policy, a contract by which the next of kin of one about to be employed by the railroad company releases the company from liability to him for damages resulting from negligent injuries to him when the statute provides for such a liability, saying:

"It is the law that courts will not enforce contracts made for the purpose of violating statutes, but will hold them inoperative and void."

■ The statutes referred to plainly provide for the payment of the annuity mentioned therein. The regulation and waiver nullify the statute and are inimical to the public policy of the state. The waiver is void.

The public policy of the state of Oregon is plainly indicated by the provisions in regard to the payment by the district to the Teachers' Retirement Fund for the purpose of paying the annuity provided for in the statute.

■ We think that the contract of waiver was clearly against public policy and void. A condition against public policy, imposed on an annuity by the donor or grantor thereof, is not binding on an annuitant: 3 C. J. 205, § 11.

■ It is our opinion that it is appropriate and that the district has implied power to determine by physical examination whether an applicant is afflicted with any communicable disease or is incapable of discharging his or her duties as a teacher (§§ 35-1110, 59-306, 59-401, Oregon Code 1930), and for the purpose of determining whether the district will employ such teacher.

In the state of New York provision is made for physical examination to determine the fitness of an instructor. See *Matter of Freistater*, 53 State Depart-

ment Reports (New York) p. 178. See also *Matter of the Appeal of Victor H. Boyd* from the action of the Board of Education of the City School District of Salamanca in refusing to continue his employment as principal of the Salamanca High School, 40 State Department Reports (New York) p. 248.

We quote from *Strauss v. Hannig*, 256 App. Div. 662, 11 N. Y. Supp. (2d) 102:

"As respects applicant's physical fitness for position of high school teacher, although scope of physical examination should not include mere speculation as to span of life, inquiry as to whether a recognized and presently existing disease will render applicant unable to perform duties in a short time was not improper in view of public's interests from standpoint of tenure of office and pension rights and service."

The opinion in *State of Indiana ex rel. Anderson v. Brand*, 303 U. S. 95, 82 L. Ed. 685, 58 S. Ct. 443, 113 A. L. R. 1482, is very instructive in regard to the teachers' tenure law and the force and effect of contracts relating thereto. In regard to the contract of waiver in question, in 12 Am. Jur. 662, § 167, we read:

"Liberty of contract is subject to the limitation that the agreement must not be against public policy. If a contractual surrender or modification of such a fundamental right as that of the individual to contract is contrary to the public interest, it is ineffective. Certain rights, as of life and personal liberty, in a restricted sense, are so absolute as to be unalienable, and, in any event, the surrender of a fundamental right is not within the power of an individual if the public interest is thereby prejudiced.

"It is a general rule that agreements against public policy are illegal and void. * * *"

In the case of *Sherman v. Board of Trustees*, 9 Cal. App. (2d) 262, 49 P. (2d) 350, the facts disclose that

a teacher, after teaching successfully for three consecu-
tive years, resigned to avoid the effect of the Teachers'
Tenure Law, on the superintendent's request, and on
his definite promise that she would be re-employed,
and at least one member of the board had knowledge
of the conversation between the superintendent and
the teacher, and she was re-employed and served for
three further successive school years. It was held
that the teacher was entitled to the status of a perma-
nent teacher, the purported resignation being ineffec-
tual, citing the School Code, § 5.500, as added by St.
1931, p. 1934, § 4.

In *Hosford v. Board of Education of City of Minne-
apolis*, 201 Minn. 1, 275 N. W. 81, 84, we read:

"A resignation by a teacher at the end of her proba-
tionary period, given without any intention of termi-
nating her employment as a teacher and upon a definite
promise that she will be re-employed, is ineffectual,
and does not defeat her right to tenure upon re-em-
ployment. Re-employment after completion of the
probationary period gives rise to tenure rights on the
part of the teacher. Such a resignation is in circum-
vention of the Teachers' Tenure Law and is void.
Sherman v. Board of Trustees, 9 Cal. App. (2d) 262,
49 P. (2d) 350."

In *Moore v. Board of Education*, 121 App. Div. 862,
106 N. Y. S. 983 an act of the legislature provided that
"no female teacher of a girls' graduating class * * *
shall after ten years of service in said schools receive
less than fourteen hundred and forty dollars per an-
num." Pursuant to this act the board of education
adopted a by-law which provided: "Female teachers
in the elementary schools appointed to classes in the
8 B Grade shall receive salaries in accordance with
the following schedule, viz.: * * * Years * * *

7 ... L ... $1,440.'' At the time the act was passed plaintiff was receiving a salary of $1,320 per annum, and it is conceded that she continued to be paid, and to have accepted salary at that rate down to the time of her retirement on February 1, 1901, and to have been paid and accepted a pension at the rate of half that sum, or $660 per annum, since the date of her retirement. The claim was made that she was entitled to receive from the date of the passage of the act to the date of her retirement a salary at the rate of $1,440 per annum and a pension since she retired at the rate of half that salary, or $720 per annum. Her judgment was for the difference between what she had received and what she claimed that she was entitled to receive. The judgment was affirmed.

We see but little difference, if any, in principle, in the application of the teachers' annuity law and the teachers' tenure law.

■ Providing for retirement for teachers and for annuity is a proper public function in aid of free education: *Powers v. Home for Aged Women*, 58 R. I. 323, 192 A. 770, 110 A. L. R. 1361, 1365. See also *Bowler v. Nagel*, 228 Mich. 434, 200 N. W. 258, 37 A. L. R. 1154, 1158.

It follows that the judgment of the circuit court is reversed and the waivers in suit are declared to be void.

Neither party shall recover any part of the costs or disbursements herein.

---

ROSSMAN, J. (specially concurring). I concur in the conclusion reached by Mr. Justice BEAN, but do not believe that the issue before us is affected by the

public policy of this state. The issue is settled, I think, by the provisions of the statute (§§ 35-2701 to 35-2710, Oregon Code 1930) which we are considering. That statute, after providing that retirement fund associations may be created, provides that they "shall have full power and authority to receive, collect, invest, loan and disburse funds in accordance with the plan so adopted." But, there is nothing before us which indicates that the waivers exacted by the school board are any part of the plan which has been adopted. To the contrary, § 35-2706 plainly says that after a retirement fund association has been incorporated "all teachers accepting employment in said district," with the exception of a few with whom we are not now concerned, automatically become members of the association and become "subject to the provisions and requirements contained in said plan of the association * * *." Next, the section just cited provides that all of the teachers aforesaid shall be "entitled to the benefits thereof"; that is, to the benefits of membership in the association. Thus, payments must be made to all teachers employed by the district except to the few aforementioned who are not concerned with this proceeding. The act certainly mentions no formula or test whereby some teachers are to be picked out for membership in the association and others are to be rejected, although permitted to become teachers. Membership in the association is not voluntary—it is compulsory. If a teacher can be disqualified by reason of ill health, even though the legislature by the passage of this act made her a member of the association, then conceivably the school board, or the officials of the association, can prescribe other disqualifying tests. Thereby, they could repeal parts of the act.

We have been cited to no law which grants to the school board power to discriminate among the teachers, rendering some eligible for membership in the association and others not. To the contrary, the statute expressly renders all of them, whether their health be good or bad, members of the association by saying that "all teachers accepting employment in said district" shall be members of the association and shall be entitled to receive the beneficial payments. A board has the power to select teachers, but, having made the selection, the statute makes the teacher a member of the association whether the teacher desires membership or not. The teacher becomes a member, not through choice but through the operation of the statute. Membership is not a matter of volition—it is the result of legislation.

A retirement fund association is created, so § 35-2702 says, under the provisions of our law which authorize the formation of religious, charitable and educational corporations. That law and the act before us measure the power which the association possesses. The exercise of a power which the corporation does not possess is an ultra vires act. Therefore, to exclude from membership a teacher employed by the district, and to refuse to remit to her or him the beneficial payments, although the act defining the course to be pursued by the association recognizes such teacher as a member of it and as entitled to receive the benefits, is an ultra vires act. It is our duty to say so.

It is true, as the plaintiff argues, that retirement fund associations may be created or not as the teachers to be affected choose. The act is permissive—not mandatory. But, when an association is formed, it is bound by the terms of the act—as much so as is a community

bound by a local option law after having voted to exclude liquor.

I concur in Mr. Justice BEAN's opinion and in his reasoning, so far as his views and those expressed above do not conflict. The public policy of the state, in my opinion, does not affect the issue.

I realize that the Portland School Board in taking its course was prompted by good faith, and hence my use of the word "discrimination" was intended only for legal, and not for critical purposes.

BELT, J., concurs.