## Board of Education of Louisville v. City of Louisville et al.

Dec. 16, 1941.

658

William T. Baskett for appellant.

Lawrence S. Poston for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

The case involves the validity of that part of Section 49 of the Teachers' Retirement Act of 1938, Acts of 1938, 1st Ex. Sess., Chapter 1; now Section 4506b-1 et seq., Statutes, Supplement 1939, which makes provision for the continuance of payments to teachers on the retirement roll of a local system at the time it is discontinued by being merged into the state system. The circuit court held so much of it as mandatorily requires the levy of a special tax for that purpose to be unconstitutional because not embraced in the title of the act. The judgment is before us for review. A declaration of rights of the parties in respect of paying the annuities out of general funds of the district will also be made.

Section 27 of the Act, Section 4506b-26, Statutes, excludes from its benefits teachers of a local district in which a retirement or annuity system is maintained under other laws, but provides that upon a majority vote of the teachers participating and the approval of the Board of Education all active members of a local organization may become members of the state system and the local plan shall be discontinued. Section 49 of the Act, Section 4506b-49, Statutes, more particularly prescribes the procedure to be observed for the merger, and states the rights of "present teachers" as defined in the act.

When the merger shall have been accomplished and the local system discontinued, "the payment of all benefits to members on the retired roll at the time of discontinuance shall become the obligation of the school district in which the local system was operated prior to its discontinuance." It is further provided that the funds of the local organization shall be evaluated and the present value of its liabilities on account of the annuitants on the roll shall be computed. Then "the amount of refundable deposits due each member in accordance with the laws and regulations of the local retirement system" shall be ascertained and the board of education shall pay the sums to the members—apparently to other than those on the retirement roll.

We come now to the portion of the section involved in the case. It is as follows:

> "If the remaining sum is less than the present value of liabilities on account of annuitants on the rolls of the local system at the time the local system is discontinued, the local board of education or the taxing authority which levies school taxes for the local board of education upon recommendation of said board of education shall annually levy a tax rate sufficient to discharge in full the obligation to annuitants, provided that in cities of the first class such levy shall not exceed (1) one cent on each $100.00 of assessed value of property made by such taxing authority. The levy of such tax shall be mandatory."

Other portions of this lengthy section do not appear to be material to the decision as to its validity under Section 51 of the Constitution.

The local retirement system in Louisville was merged into the new state system and the local organization discontinued in accordance with the act before it became operative on July 1, 1940. The funds of the local organization have been valued at $131,836.85 and the aggregate of "refundable deposits due each member" is $126,036.85. This is 50% of their contributions. So there is left available only $5,800 for the production of income with which to pay the retired teachers. At the time of the merger there were on the pension roll eighty-five former teachers ranging in age from forty-three to ninety-one years. The amount required to pay

them in the fiscal year ending August 31, 1941, is $16,676.

Complying with the terms of Section 49 of the State Teachers' Retirement Act, the Board of Education of Louisville, by proper procedure, requested the Board of Aldermen, which is the authority that levies the school tax (Section 4399-40, Statutes), to levy a special tax sufficient to yield the sum necessary to meet the obligation to the retired teachers, not exceeding 1 cent on the $100 of assessed value of property. The Board of Aldermen refused to make the levy. Thereupon the Board of Education instituted this action against the city and the members of the Board of Aldermen seeking to have the court declare the duties of the defendants and to command them, by injunction, to levy the necessary additional tax. As we have stated, the circuit court sustained the defense that the portion of the State Teachers' Retirement Act sought to be enforced is unconstitutional under Section 51 of the Constitution, which requires that the subject of a legislative act shall be expressed in the title.

It has been the consistent interpretation of this section of the Constitution that if the title of an act is general, then any provision in the body having a natural connection with the subject expressed in the title and not foreign to it satisfies the requirement of the Constitution. But if the title is specific as to the provisions of the act and is such as leads to a reasonable supposition that its object is to restrict the scope of the act within the limits specified, then any provision outside of those specifications must be eliminated as unconstitutional. Wiemer v. Commissiouer's Sinking Fund, 124 Ky. 377, 99 S. W. 242; Ingram's Adm'r v. Advance Motor Co., 283 Ky. 87, 140 S. W. (2d) 840. These early and late cases will serve to show the scope and continuity of the interpretation. Particular application will be found in them and many intermediate opinions.

The title to the act under consideration is as follows:

"An Act providing a Teachers Retirement System for the State of Kentucky; providing for retirement allowances for teachers of State supported Colleges, Public Schools, (including all elementary and secondary schools of the state); providing for disabil-

ity benefits for disabled teachers of such schools; providing that the funds for the payment of retirement annuities to teachers and for disability benefits shall be raised by contributions from the teachers and by contributions from the State of Kentucky from its general funds; providing for the repeal of Section 4506a-1 through and including Section 4506a-15; and providing for the administration and management of the retirement system and all funds created for its maintenance and support, by a Board of Trustees to be selected under the supervision of the Superintendent of Public Instruction, by a vote of the members of the system. This Act shall be known as the Porter-Rayburn Act."

Nowhere in this title can be found any reference to the provision which requires a local board of education, or "the taxing authority which levies school taxes" upon its recommendation, to levy an extra tax to pay the pensions of superannuated teachers who are not eligible to become members of the state system. On the contrary, the terms of the title negative such an idea. The fourth clause of the title specifies "that the funds for the payment of retirement annuities to teachers and for disability benefits shall be raised by contributions from the teachers and by contributions from the State of Kentucky from its general funds." Sometimes it is difficult to draw the line between what is within and what is without a specification in the title. Where there is reasonable doubt, in recognition of its duty to sustain the validity of a legislative act, the court always resolves the doubt in favor of its constitutionality. But there is no doubt in this case. We have a number of analogous cases.

In South v. Fish, 181 Ky. 349, 205 S. W. 329, the title indicated only that the act related to the codification of existing statutes on the subject of public health in certain specified particulars; but the act itself established a new board of health. That part was declared unconstitutional. And in District Board of Tuberculosis Sanitorium Trustees v. Bradley, Mayor, 188 Ky. 426, 222 S. W. 518, we held a provision in the same act requiring a local tax levy for the benefit of a sanitarium invalid because not covered by the title. In Booth v. City of Owensboro, 275 Ky. 491, 122 S. W. (2d) 118, the title indicated only that an existing statute empowering

cities of the third class to establish and operate electric plants was extended to embrace other cities, but the body of the act amended the statute so as to restrict the acquisition of such plants by a city of the third class and others as well by requiring a submission of the proposition to a vote of the people. That was clearly unconstitutional. There are many other decisions of like effect. But little precedent is needed here. The title indicates that all funds for pensions and benefits are to be raised by contributions of the teachers and the State of Kentucky. Reading the act one is surprised to find a provision in it mandatorily requiring a local taxing authority to make a special levy for that purpose. Moreover, the title refers to the repeal of only Sections 4506a-1 to 4506a-15 of the Statutes. Those sections cover an act of 1928 which established a voluntary state system of teachers pensions. This reference was calculated to have the reader believe that no other statute was amended or repealed, but the provision we are considering has the effect of amending all of the several statutes authorizing and limiting the local tax rate for schools by raising the rates as high as the obligations may require for this purpose in other than in cities of the first class and in them up to 1 cent on the $100.

We cannot agree with the argument of the Board of Education that the first clause of the title, which is general in its scope, is sufficient to embrace the provisions under consideration. It probably would be but for the restrictive specifications which follow. Jefferson County Fiscal Court v. Thomas, 279 Ky. 458, 130 S. W. (2d) 60. Nor can we yield to the contention that as the tax levy by a local district in aid of the schools is raised as a state tax, the municipality being the agent of the state in making the levy (City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411), the statement in the fourth clause of the title that the fund is to be raised in part by contributions by the state covers the attacked provision of Section 49. This would be to ignore the enactment that the state's contributions shall be payable out of its general funds, which obviously excludes payment out of any school fund, local or general. We think it is manifest that the judgment of the circuit court holding the provision under consideration to have no force because of its unconstitutionality should be affirmed.

The petition also alleged that there was a contro-

versy existing between the plaintiff and the defendants as to whether any part of the proceeds of the regular levy can be used for that purpose. The Board of Education, therefore, prayed, contingent upon it being adjudged that it was not the duty of the defendants to levy this special tax, that the court declare its rights in respect to paying pensions out of its regular funds. The circuit court declined to do so because the beneficiaries were not parties to this action. It would have been better had they been made parties, either individually or by representation. Declining to declare the rights was within the discretion of the circuit court. Section 639a—6, Civil Code of Practice. Ordinarily, we would follow the same course, but an important public question is involved which should be decided as early as practicable, and, under the view we have, an adjudication will not adversely affect the rights of the beneficiaries. So we shall dispose of it. This is in accordance with the spirit and purpose of the Declaratory Judgment Act. Section 639a—1 et seq., Civil Code of Practice.

To avoid a possible misconstruction of the opinion, we may say that the manner of distribution of the principal of the fund of the local retirement system and the relative rights therein of retired and active teachers are questions not specifically involved in the case. It appears certain that there is or will be a deficit in some amount in the funds available for the satisfaction of the annuities to the retired teachers who were members of the local organization, regardless of any decision concerning the disposition of the principal.

The Louisville system was organized under the terms of Chapter 129 of the Act of 1912. Section 2978d-1 et seq., Kentucky Statutes, 1930 edition. This statute created the ''Trustees of Teachers' Annuity Fund of Louisville'' as a corporate body with appropriate powers, including that of entering into contracts. The Board of Trustees was composed of a member of the Board of Education, the Superintendent of Schools, and five others elected by the teachers from among themselves. The treasurer of the school board was ex officio treasurer of the fund and liable on his bond as treasurer of the Board of Education for the performance of the duties imposed upon him by the act. This body administered the system. Its organization was mandatory and the funds were accumulated by the com-

pulsory assessment of every teacher of one or two percent of his or her salary, dependent upon the length of service. The treasurer, under mandate of the law, deducted the assessment from the teacher's pay checks and placed same in the fund to his credit. This, it was declared, "shall be and remain a permanent fund, and no part thereof shall be expended except the interest and income thereof and therefrom." The rights of the teachers in respect to retirement because of age or disability and the basis for calculating their annuities were clearly defined. It was provided that they should "receive an annuity during the remainder of his or her life, subject, however, to all conditions of this act." Anyone ceasing to teach in the schools of the city before receiving any benefit was entitled to the return of one-half of the amount which he had paid into the fund. This is the authority and basis for calculating the sum alleged to be refundable to active members as above stated, namely, $126,036.85.

In the general revision of the school laws in 1934, as amended in 1936, boards of education of cities of the first, second and third classes were empowered to establish a retirement system for teachers and other employees, to be administered by a special corporation, the board of trustees of which was composed of the Superintendent of Schools and members elected by the teachers. Chapter 65, Acts of 1934, page 306, as amended by Chapter 41, Acts of 1936, published as Section 4506-1 et seq., Kentucky Statutes, 1936 edition. The adoption of the system was optional, but if adopted the teachers were compelled to participate; and the local Board of Education was required to contribute at least the equivalent of the total contributions of the members. The act expressly repealed the 1912 act under which the Louisville system was created.

It is maintained by the appellee that the Louisville system then ceased as a statutory plan and has been continued as a strictly private organization. Article IX, Section 2, of the 1934 Act, as amended in 1936 (Section 4506-2, Statutes) conferred upon a board of education of a city of the first, second or third class which was already operating an annuity system for teachers and other employees, "full authority to adopt, modify, change or revise the present system, including pensions already granted." The Board of Education and the

teachers of Louisville chose to adopt its present plan and continued the system under which it had operated for twenty-two years. It appears that this was acquiesced in and recognized by the state school authorities. The acceptance of the present teachers of Louisville into the new State Teachers' Retirement System on the basis of membership in the local system is further recognition of its statutory character. There is doubt as to the true intent of the portion of the 1934 act concerning the continuance of existing systems. It seems to us the obscurity requires the application of the rule of contemporaneous construction. Commonwealth v. Gregory, 121 Ky. 256, 89 S. W. 168; City of Louisville v. Board of Education, 154 Ky. 316, 157 S. W. 379; Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673; O'Connell v. Duff, 276 Ky. 782, 125 S. W. (2d) 718. We, therefore, hold that the Louisville system continued under statutory authority.

Reverting to the operation of the local system. It appears that one-half of every dollar paid into the fund was ear-marked for each contributor individually and the other half for all of them collectively. Now that a final accounting must be had, it is found that the plan was unsound actuarily and the fund set apart for the collective use or payment of vested annuities has been diminished to a negligible sum.

The question is, What shall be done about it to protect the rights of the eighty-five retired teachers? It is to be borne in mind that this was not a strictly private co-operative insurance scheme. It was established by law, operated by law, administered by a public body according to law, and the teachers compelled to participate in it by law. The payments were not mere contributions in the ordinary sense of that term. They were mandatory deductions from their salaries before the same were paid—in the nature of a tax collected from them. Compare the Unemployment Compensation Act, Section 4748g-3, Kentucky Statutes, Supplement 1939; Unemployment Compensation Commission v. Savage, 283 Ky. 301, 140 S. W. (2d) 1073. The system so set up by the law having proved to be unsound, in morals and good conscience those who were compelled to participate in it and taxed accordingly until they became incapacitated and entitled to the benefits ought not to be turned out empty-handed. They had a contract with an

agency of the Commonwealth of Kentucky entitling them to the benefits for which they had paid. The strength of every contract lies in the right of the promisee to rely upon the constitutional security against impairment of its obligations by legislation (Sections 14, 19, Kentucky Constitution) and in the right to resort to courts of public justice for the redress of its violation.

The weight of authority is that the fact a prospective beneficiary has made a compulsory contribution does not give him a vested right to receive a pension according to the terms of the plan so that it might not be changed. Annotations; 54 A. L. R. 943; 98 A. L. R. 505; 112 A. L. R. 1009. And this court so holds. Head v. Jacobs, 150 Ky. 290, 150 S. W. 349; Miller v. Price, 282 Ky. 611, 139 S. W. (2d) 450. But it is generally conceded that there is a distinction where the conditions of the pension plan have all been fulfilled and a participant has already been placed on the pension roll.

"The rule may be stated to be that when it has been determined that an officer is entitled to a pension and the pension has been officially allowed, or when the event happens upon which the granting of the pension is dependent, the pension thereupon becomes vested and cannot afterwards be revoked or impaired." Note, 98 A. L. R. 507; Supplemental Annotations, 112 A. L. R. 1010.

Compare Tyson v. Board of Trustees of Firemen's Pension Fund, 139 Ky. 256, 129 S. W. 820, in which it is held that one rightfully placed on a pension roll cannot be removed without cause by later action of the Board of Trustees, the personnel of which had changed, the act establishing the system not so providing.

We are not without precedent in the application of these principles and the protection of these rights of teachers. In Raines v. Board of Trustees, 365 Ill. 610, 7 N. E. (2d) 489, the court drew a distinction between a pension fund and an annuity fund derived in part from voluntary contributions made under a statutory option to contribute or refrain from contributing, reaching the conclusion that in the case of the annuity fund, election to participate by one eligible to do so and his fulfillment of the statutory conditions raised a contractual relationship, the rights and liabilities of which were to be determined by the statute. Note, 112 A. L. R. 1012.

In Ball v. Board of Trustees, 71 N. J. L. 64, 58 A. 111, a legislative act created a retirement system by which teachers electing to come under its provisions made contributions to the fund by agreeing to a reservation of one percent of their salaries. Becoming incapacitated after twenty years' service, a teacher was entitled as a matter of right to its benefits upon complying with the prescribed conditions. It was held that the legal relation between the plaintiff and the Board of Trustees was that of contract which could not be impaired by any legislative act or otherwise altered without the consent of both parties to it upon sufficient consideration; hence, the plaintiff was entitled to judgment. Later the statute was amended to make participation compulsory upon those who should be appointed in the future to teaching positions. The right of a local board of education to make the stipulated deduction from a teacher's salary which had been fixed by a written contract of employment was challenged in Allen v. Board of Education, 81 N. J. L. 135, 79 A. 101, affirmed, 84 N. J. L. 402, 86 A. 1102. Confirming the decision in the Ball case, that the relationship was contractual and that the terms of the statute formed a part of such contract of employment if a teacher elected to become a member of the system, it was held that she could not prevent the deduction of a portion of her salary each month for the purposes of the retirement fund.

In State ex rel. O'Neil v. Blied, 188 Wis. 442, 206 N. W. 213, it was held that a contractual relation existed between the state and a teacher and that rights which accrued to him under a statute entitling his estate to receive a certain sum of money at his death out of an insurance retirement fund, to which he and the state had contributed, was a vested right which could not be diminished by the operation of a statute enacted after he became a member of the system and before his death.

We think the Legislature of Kentucky instead of intending to impair the rights of the retired teachers recognized them in that part of Section 49 of our State Teachers' Retirement Act of 1938 which provides that upon merger of a local retirement system into the state organization "the payment of all benefits to members on the retired roll at the time of discontinuance shall become the obligation of the school district in which the local system was operated prior to its discontinuance."

After making specific provision for preserving and handling the annuitant funds by the Board of Education, the section concludes with the provision that it "shall safeguard the Annuity Fund" by requiring additional bond of the treasurer and an annual audit "and by levying such a tax rate or making such an appropriation to the Annuity Fund from local school revenues as will guarantee the full and complete discharge of all obligations to annuitants." The elimination of that part of this section requiring an extra tax levy because it is not germane to the title does not affect its provisions in respect to the merger of local systems or to the discharge of their obligation. They are within its scope. Thus the legislature has expressly imposed the obligation of paying the vested annuities to the retired teachers when the local system has been discontinued in accordance with the act.

The appellees have contended that the General Assembly may not require a city to levy a tax for the benefit of any person or group of persons who once were in the public service and had received compensation for their services but had retired when the pension act was passed. In short, the argument is that retirement provisions may be prospective but not retrospective. It is not necessary that the proposition be considered in its fullness. It appears in part in the consideration of the power of the legislature to require the local school district to assume the obligation of annuities payable to the teachers who had already retired. As we have already stated in the course of this opinion, a local school tax is a state tax and the Board of Aldermen of the City of Louisville in levying it at the request of the local board of education is but the agency of the state. Its requirement by the legislature does not offend Section 181 of the Constitution which prohibits the General Assembly from imposing taxes for municipal purposes. City of Louisville v. Board of Education, supra. The proposition is further narrowed by the conclusion that when the State Teachers' Retirement Act became effective, the retired beneficiaries had acquired a vested right to the annuities which could not be impaired by legislative action. So the question is not whether the state may impose upon its local districts the obligation of paying a pension to a teacher already in retirement. It is whether the state having changed the basis of taxation—from the

salary of local teachers to the property of the district—may continue the annuities begun when the recipient was actively in the service of the state. Thus we get to the proposition whether the legislature could have originally granted teachers pensions upon this plan, for, obviously, if it could do so in the beginning it could continue it or substitute it for another. The plan as it relates to the question we are now considering is to require payment of pensions out of local school funds exclusively.

It is well to bear in mind that on this question we are not dealing with any right of retired beneficiaries of a pension system in which there was voluntary contributions or compulsory deductions from salaries in the nature of a tax but are dealing with the proposition of the state granting pensions and providing the whole sum by current taxation. The granting of a pension under such circumstances does not stand on the plane of a contract and does not vest any right in the pensioner. It is a periodical allowance as a reward for continuous faithfulness in the discharge of a public duty, or a gratuity bestowed in recognition of public service, of some class or group. This is within the reasonable discretion of the legislature and may be diminished or discontinued at its pleasure. Head v. Jacobs, 150 Ky. 290, 150 S. W. 349; Rohe v. City of Covington, 255 Ky. 164, 73 S. W. (2d) 19; Annotations, 54 A. L. R. 940; 31 Words and Phrases, Perm. Ed., p. 663, "Pensions." Obviously, we are not here concerned with a pension granted for loss or disability sustained in the public service.

It is as fundamental as it is elementary that the legislature expresses the will of the people and may exercise plenary power in all things where it is not restrained by the Constitution or limited by the powers surrendered to the Federal government. Board of trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606. When those restrictions are not specific but are contained in general principles, the courts have found them flexible enough not "to impair the efficiency of the legislature to meet responsibility occasioned by changing conditions of society," and to "bring them into accord with what the courts believe to be the public interest." 11 Am. Jur., Constitutional Law, Section 51; Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Jefferson County v. Jefferson County Fiscal Court, 273

Ky. 674, 117 S. W. (2d) 918. Though the granting of pensions by the state to war veterans and by the states and municipalities under enabling acts to public servants has developed in later years and in Kentucky under the present Constitution, the power of the Federal government to pursue that policy, it is said by the Supreme Court, in United States v. Hall, 98 U. S. 343, 346, 25 L. Ed. 180, "is not controverted, nor can it well be, as it was exercised by the States and by the Continental Congress during the war of the Revolution; and the exercise of the power is coeval with the organization of the government under the present Constitution, and has been continued without interruption or question to the present time." Thus the general power of a state to grant a pension has existed from the beginning.

The pensioning of civil officers and employees of the government is of more recent origin. It is keeping in step with the social progress of the times in which the commercial world has come to recognize the wisdom and fairness of making such provisions for its employees. Teachers in the public schools are state employees and render public service. Board of Trustees of Fairview Graded Common School District v. Renfroe, 259 Ky. 644, 83 S. W. (2d) 27.

It is submitted that the granting of pensions to teachers is prohibited by Section 3 of the Constitution which declares the equality of citizenship and provides that "no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services." Under the concept of pensions as above and as ordinarily defined, this provision of the Constitution does not apply. If it did apply, then there could not be in Kentucky any sort of pension granted by the state, or any political subdivision under enabling acts, and the pensioning plans of city police and firemen would be destroyed and the several opinions sustaining them would have to be overruled. We have many such cases, but citation is not necessary.

In Talbott v. Thomas, 286 Ky. 786, 150 S. W. (2d) 1, in which a majority of special judges held an act pensioning judges of the Court of Appeals to be unconstitutional on the theory that a pension is compensation, the payment of which was but deferred, it appears that

only two of those judges were of opinion that it violated the terms of Section 3 of the Constitution.

Nor does such law violate Section 179 of the Constitution prohibiting the General Assembly from authorizing any city, town or incorporated district to appropriate money for any individual except for the construction or maintenance of public roads; or Sections 181 or 181a, which prohibit the General Assembly from imposing taxes for local purposes, because, as we have already stated, the levying of a local tax for the benefit of local schools is done as the state's agency for a state purpose. See also Fox v. Board of Louisville and Jefferson County Children's Home, 244 Ky. 1, 50 S. W. (2d) 67.

This brings us to the proposition that the appropriation of funds for retired teachers is not for a school purpose. It is sometimes difficult to determine what is a school purpose. There are many services paid for out of school funds farther outside the purpose than paying pensions to retired teachers, the basis of which, as we have indicated, is the inducement to remain in the service with the consequent benefit that comes from having experienced teachers, and, as well, to reward faithful service for compensation, more often than not, much less than might have been received in other professions. The constitutionality of the several teachers' pensioning acts of this state beginning thirty years ago was not questioned. There are many teachers' pension plans throughout the country and the courts have regarded the payment thereof as a proper appropriation or use of such funds where it has been authorized by the legislature. 24 R. C. L. 696; 56 C. J. 432. As stated in Powers v. Home for Aged Women, 58 R. I. 323, 192 A. 770, 773, 110 A. L. R. 1361:

> "It has repeatedly been held by courts of last resort that providing for retirement pay to public school teachers is a proper public function in aid of free education. Attorney General v. Connolly, 193 Mich. 499, 511, 160 N. W. 581; State v. Hauge, 37 N. D. 583, 164 N. W. 289, L. R. A. 1918A, 522; State v. Levitan, 181 Wis. 326, 193 N. W. 499."

A like expression is found in School District v. Teachers' Retirement Fund Association, 163 Or. 103, 95 P. (2d) 720, 96 P. (2d) 419, 125 A. L. R. 720, 727. We understand that about two-thirds of the states have

674

teachers' pension systems. It was specifically held in State v. Hauge, supra, that subsequent authorization by the legislature of the use of a tax which was levied for general school purposes to pay teachers' pensions was valid. State v. Levitan, supra, is also a well-reasoned opinion sustaining the right and power of the legislature to provide for pensions for teachers. We are of opinion, therefore, it was competent for the legislature to provide for payment of retired teachers' pensions out of the general school funds, and the intent that the local district should bear that obligation is so manifest that upon failure of the provision for a special tax the obligation must be met with the regular tax.

The judgment holding ineffective that part of Section 49 of the State Teachers' Retirement Act of 1938 which requires a special tax levy is affirmed. It is reversed in part, with directions to enter judgment declaring the duties and rights of the parties consistent herewith.

Whole Court sitting.